CAMPBELL v. ARBUCKLE.

*(Supreme Court, General Term, First Department.　January 28, 1889.)*

1. BREACH OF PROMISE OF MARRIAGE—EVIDENCE—SUFFICIENCY.

In an action for breach of promise of marriage, where it appears that defendant made no effort to carry out his promise, that all his letters to plaintiff ignored the existence of any engagement, and that he made no answer to her requests to name the day for their marriage, a refusal to comply with his promise is sufficiently shown.

2. SAME—INSTRUCTIONS.

Though defendant, in answering plaintiff's letters requesting him to fix the wedding day, referred frequently to his ill health, but did not give it as a reason for delaying the marriage, it is not error to refuse to charge that if defendant was not well, and it was arranged that the marriage should be deferred until his health should be restored, plaintiff, to recover, must show that his health had been restored, and that he subsequently broke the engagement, or had previously absolutely declined to marry plaintiff.

3. SAME—DAMAGES—IMPROPER PROPOSALS.

An instruction that if the jury believe a letter written by defendant to plaintiff contained a proposal to become his mistress instead of his wife, they might take that fact into consideration as bearing upon the damages, if they awarded any, is proper; the letter, which was written during the engagement, being capable of that construction.[1]

4. SAME—HOW ESTIMATED—DISCRETION OF JURY.

In such case it is proper to charge that if the jury find for plaintiff she is entitled to recover such damages as they may award, and that the amount is discretionary with them, provided only that their conduct should not be marked by prejudice, passion, or corruption; the jury being also charged that they should be bound by the evidence in the case, and must not be influenced by sympathy for one party or hatred of another.[1] VAN BRUNT, P. J., dissenting.

Appeal from circuit court, New York county.

Action by Clara Campbell against Charles Arbuckle, for breach of promise of marriage. The promise was alleged to have been made in April, 1882, and the damages were laid at $250,000. Verdict and judgment were for plaintiff for $45,000 and costs, from which, and from an order denying a new trial, defendant appeals.

Argued before VAN BRUNT, P. J., and BRADY and MACOMBER, JJ.

*T. J. & R. F Tilney* and *John E. Parsons,* for appellant. *Jordan & Hodges* and *William Fullerton,* for respondent.

MACOMBER, J. The evidence of the engagement of marriage of the parties to this action is conclusive, and substantially undisputed. It rests in the offer of the defendant to the plaintiff, and in her acceptance of that offer, which was embodied in a written communication by the man to the parents of the woman, informing them of the engagement, and asking their sanction thereto, which was accordingly given. The breach of the contract is also satisfactorily proven. It does not stand, it is true, upon a verbal or written refusal to carry out the obligation which the defendant had assumed, but rather upon circumstances from which only a refusal may be derived. A perusal of

---

[1] In actions for breach of marriage promise, the jury, in estimating damages, may consider the injury to plaintiff's feelings and reputation, and any circumstances of indignity under which the wrong was done, Vanderpool v. Richardson, (Mich.) 17 N. W. Rep. 936; Bird v. Thompson, (Mo.) 9 S. W. Rep. 788; and the money value or worldly advantage of the marriage, Dupont v. McAdow, (Mont.) 9 Pac. Rep. 925, or defendant's pecuniary circumstances, Olson v. Solverson, (Wis.) 38 N. W. Rep. 329; Bennett v. Beam, (Mich.) 4 N. W. Rep. 8; and exemplary damages may be awarded in some cases, Johnson v. Travis, (Minn.) 22 N. W. Rep. 624. Evidence of seduction under the promise may always be considered in aggravation of damages, for mental suffering, injury to reputation, and loss of virtue, Giese v. Schultz, (Wis.) 10 N. W. Rep. 598, Bennett v. Beam, supra; but not that plaintiff was gotten with child by the seduction, and suffered a miscarriage, Giese v. Schultz, supra, second appeal, 27 N. W. Rep. 353. Where defendant alleges plaintiff's unchastity as a defense, and fails to establish it, this aggravates damages. Kelley v. Highfield, (Or.) 14 Pac. Rep. 744.

the evidence, particularly the many letters written by the defendant to the plaintiff, shows that after June 4, 1883, if not prior thereto, the defendant had given up all purpose of marrying the plaintiff, though he nowhere, so far as I am able to find, in words so declared himself. If the defendant intended to carry out his contract at any time after this date, it was incumbent upon him to name the time for so doing. There is some evidence, chiefly by the defendant's assertions in his letters, that he was afflicted slightly with malaria and some other trouble, but not to an extent which would unfit him for matrimony, or for the existence of which he could properly claim to be absolved from his agreement. When, in December, 1883, the plaintiff asked him, by letter, positively to fix the day for their wedding, it was the duty of defendant to so fix it, or give some reasonable excuse for failing to do so. Ill health would doubtless be a justification for the postponement of the marriage-day, where the contract, as in this case, has not settled the day, and a reasonable delay on account of slight ill-health would, of course, be permitted; but a delay, accompanied by written correspondence, and by actions which so completely ignore the existence of a contract of an engagement to marry, as is disclosed by the testimony, is tantamount to a refusal, and constitutes a sufficient breach to enable an action to be maintained therefor.

It is claimed by the learned counsel for the appellant that the learned judge committed an error prejudicial to his client by refusing to charge the jury that, if the defendant was not well, and it was a part of the arrangement that the marriage should not take place until he should recover his health, the plaintiff could not maintain her action without showing that defendant's health was restored, and that he subsequently broke the engagement or previously absolutely declined. There is no evidence in the case which would justify the court in assenting to this proposition. Many of the defendant's answers to the plaintiff's letters asking him to fix a date for the marriage alluded to his condition of health, but not as a reason for not complying with her request.

It is further argued that it was error to instruct the jury that if they believed that the letter of November 4, 1883, which the defendant wrote to plaintiff, contained a dishonorable proposal, or a solicitation for her to become his mistress, instead of his wife, they might take that circumstance into consideration in determining the amount of damages, if they awarded any. The exception to this portion of the charge is not well taken. There may, indeed, be two opinions entertained in respect to the purport of this extraordinary letter. Up to that time, so far as I can find, not one word of vulgarity or suggestion of licentiousness appeared in any of the communications which the defendant had addressed to the plaintiff. It is difficult to conceive of a letter, containing much of what is in this letter, being written by a man to a woman whom he expected soon to marry; but whether, read in the light of attending circumstances, it was designed to convey, covertly, a suggestion of an illicit relation to take place between them, or was a mere piece of vulgarity, it was proper to leave its contents to the consideration of the jury.

There are many things in the case which show a revengeful or wanton spirit on the part of the defendant towards the plaintiff, conspicuously in the bill of particulars, filed in pursuance of the order of the court under the allegation in the answer, and the jury would have been justified in finding that the failure of the defendant to carry out the contract was done in such wanton disregard of the feelings of the plaintiff as to justify them in giving exemplary damages. Yet it is manifest that they have confined their verdict to actual damages only, and those, too, based upon a rather economical application of the rule of damages in this class of cases. The verdict was only four and one-half per cent., for one year, on the estate of the defendant, as he admitted it to be. This cannot be deemed excessive, and affords some evidence that the jury was not influenced by any desire to punish the defendant for his failure to carry out the contract.

It is further argued that it was error for the trial judge to charge the jury that, if they found for the plaintiff, she was entitled to recover such damages as the jury might award; that they were permitted to exercise their discretion in regard to the amount of damages, provided only that their conduct was not marked by prejudice, passion, or corruption. This was not by any means the whole of the charge upon that branch of the case. This is the acquiescence of the judge to a proposition to charge the jury, coming after he had urged upon them that they were bound by the evidence in the case, and must not be influenced by any sympathy for the one party or hatred for the other. But, even if this part of the charge stood alone, it would not be such error as would justify us in reversing the judgment. This language is derived substantially from the case of *Southard* v. *Rexford*, 6 Cow 256, and is sustained by the case of *Thorn* v. *Knapp*, 42 N. Y. 474. The judgment appealed from should be affirmed, with costs.

BRADY, J., concurs.

VAN BRUNT, P. J., (*dissenting*.) I cannot concur with my associates in the conclusion at which they have arrived, although it may be supported by quite ancient and respectable authority. An examination of the decisions upon which such conclusion is founded will show that the only authority for the extraordinary proposition that in any and every breach of promise case the amount of damages is within the discretion of the jury is the case of *Southard* v. *Rexford*, 6 Cow. 254. But an examination of that case shows that it is no authority for this remarkable proposition. It is meagerly reported, but it appears that, from the nature of the defense to the breach of the contract sued upon, set up in the answer of the defendant, which he utterly failed to prove, he became liable as matter of law to exemplary damages. Exemplary damages are always in the discretion of the jury, and the damages in that case, therefore, were in the discretion of the jury; and this is all that was decided. Based upon this supposed authority, the case of *Kniffen* v. *McConnell*, 30 N. Y. 285, was decided. That was an action to recover damages for breach of promise of marriage. The defendant, under a general denial, offered in mitigation of damages, and was allowed to give, some evidence tending to show acts of impropriety and lewd conduct on the part of the plaintiff for the purpose of proving criminal intercourse with other men. The presiding judge, among other things, charged the jury that if the defendant had attempted to prove the plaintiff guilty of misconduct with other men, of which he knew she was not guilty, it aggravated the damages; another case in which the conduct of the defendant, if it was found by the jury as stated by the court, made the plaintiff entitled as matter of law to exemplary damages. In the case of *Thorn* v. *Knapp*, 42 N. Y. 474, the charge was that, where the defendant, in his answer, as in this case, attempts to justify his breach of promise of marriage by stating therein, and thus placing upon record as the cause of his desertion of the plaintiff, that she has had criminal intercourse with other persons, and fails to prove it, the jury have a right to take this circumstance into consideration in aggravation of damages to which the plaintiff might be entitled; and this charge is coupled with the statement that the defendant did not attempt to prove upon the trial any of these allegations. In this case, also, it clearly appears that the plaintiff, as matter of law, under the circumstances, was entitled to exemplary damages, which are within the discretion of the jury. In this case the court say: "The general rule as to actions upon contracts is that the plaintiff can only recover compensation for the damages he has sustained by the breach of the defendant, and exemplary damages or punitory damages are not allowed. To this rule the action of breach of contract of marriage is the exception, and, so far as I now call to mind, the only exception. As to the measure of damages, this

action has always been classed with actions of tort, as libel, slander, seduction, criminal conversation, etc., and not without reason." Here it is distinctly stated that, in addition to damages for the breach of the promise, in certain cases, where the defense thereof has been accompanied by a personal wrong, the action for the breach of promise of marriage then becomes classified with actions of tort in which exemplary damages may be given. In those cases the question as to whether the plaintiff is entitled to exemplary damages or not depends almost exclusively upon the motive with which the defendant has committed the wrong. And that this is the theory upon which the exemplary damages are allowed in actions for breach of promise of marriage is clearly conceded by the language of the court in the case last cited. It is said in that case that in all cases where vindictive damages are allowed, it is upon the theory that the defendant's conduct has been such that he deserves to be punished; and with the view of measuring out punishment to him, as well as compensation to the plaintiff, it is always competent to inquire into his motives and intention, to show that the act complained of was done wantonly, insolently, maliciously, or with a bad and wicked heart. Therefore it follows that, where the motives of the defendant are good and honest, there is no case made out for vindictive or exemplary damages, and it is only where the motives that actuated the defendant are proven to be bad, and that he entered into the contract and broke it with a wicked heart, that the plaintiff is entitled to recover exemplary damages; and it is competent for the defendant to prove in mitigation of damages that his motives were not bad, and that his conduct was neither cruel nor malicious. It therefore follows from these cases, and necessarily follows that in actions for a breach of promise of marriage, the damages are no more within the discretion of the jury than they are in the action of slander, seduction, or criminal conversation, and that the same rule applies as to the difference between the right of the jury to give compensatory or exemplary damages.

In the case at bar, there having been a breach of the contract of marriage, the plaintiff was entitled to recover compensatory damages. These damages are not within the discretion of the jury, but they must find a verdict upon the evidence, and their judgment must be exercised upon this evidence, and it is by this judgment, based upon the evidence, that such damages must be assessed. If the jury found in this case that the defendant entered into this contract, and broke it with bad motives, and a wicked heart, they had the right to punish him by exemplary damages; and these damages were within their discretion. In the case at bar, although the jury were charged as to compensatory damages, and that they might take into consideration certain circumstances of the case in aggravation of damages, yet, upon the whole case, the plaintiff was not entitled to have the court instruct the jury as matter of law that she was entitled to exemplary damages. But this is virtually what the court charged the jury. The summing up of the charge to the jury was that, if the jury found that the defendant promised to marry the plaintiff, and without just cause refused to fulfill that promise, the plaintiff is entitled to receive such damages as the jury might award. This proposition is clearly erroneous, as it places the question of the amount of damages within the discretion of the jury, without taking into consideration the only element in the case which justifies the exercise of that discretion, namely, the bad faith of the defendant. The mere fact that he broke the contract without just cause, does not necessarily import bad motives. He might have honestly thought that he had just cause, and the jury may have been of opinion that he had not. If he was honestly of the opinion that he had just cause, and his conduct in that respect was that of a reasonable man, and an honorable man, then no case whatever was presented to the jury for exemplary damages. The effect of this charge is to hold that in every case of breach of promise of marriage (because no such case can succeed unless there has been a refusal to fulfill the contract without just cause) the jury may award such damages as they see fit.

The next proposition is equally faulty. It is that the jury are allowed to take into their consideration all the circumstances, and, provided their conduct is not warped by prejudice, passion, or corruption, they are permitted to exercise their discretion over the amount of damages. This proposition is nowhere restricted by the fact that none but compensatory damages could be allowed unless a case for exemplary damages had been made out. It is but to repeat what has already been said that, in order to entitle the jury to render exemplary or punitive damages, there must be some reason for the infliction of punishment; and action in good faith does not, in cases of this description, afford any such ground.

The next proposition is that if the jury found that the defendant failed to prove the charges made by him against the plaintiff of improprieties on her part, in mitigation of damages, they were entitled to consider that fact in aggravation of damages. This proposition ignores the motives with which the charges were made. In all the cases cited, charges of improper conduct were made, and improper conduct of a more grave character than that charged in the case at bar. In those cases there was not only a failure to prove, but an utter failure to attempt to prove, the verity thereof. In the proposition mentioned, the motive of the defendant is entirely ignored; and it seems to me that this is an error which runs through the whole presentation of this case to the jury, and that the jury should have been instructed as to the difference between compensatory and exemplary damages, and their attention called to the different rules which should govern them in the assessment of these two classes of damages. There was evidence enough in this case to justify the jury in drawing inferences which would entitle the plaintiff to exemplary damages of the most substantial character. If this question had been properly submitted to the jury, the verdict, to my mind, would not seem to be in the least excessive. But it is impossible to say, from the manner in which this case has been submitted to the jury, as to whether they found such facts against the defendant as would justify them in finding a verdict of exemplary damages. The exercise of their discretion was nowhere limited upon the finding of such facts, but they were told that they had absolute control, no matter how they found the proof, as long as the breach of contract was established, to award any damages that they might see fit. I do not think that this is the rule of law governing cases of this description, nor is it sustained by the authorities which have been cited.