[Civ. No. 3180. Fourth Dist. Apr. 25, 1946.]

MINNIE STEVENS, Appellant, v. W. E. DILLON, Respondent.

Wild, Carlson & Reeve and A. D. Christensen for Appellant.

Rae B. Carter for Respondent.

MARKS, J.—This is an appeal from a judgment in favor of defendant in an action for damages brought against him for breach of a written contract which required defendant to drill three wells on leased property and install an electrically driven pump in each. The recovery sought is the cost of drilling one well and the value of one pump as only two wells and pumps were on the property when defendant gave up his lease. The sole question presented is the sufficiency of the evidence to support the findings and judgment.

Plaintiff owned 160 acres of farming land in Tulare County which she leased to defendant on December 1, 1936, for a term ending on January 1, 1941. In addition to a small cash rental to be paid to plaintiff, defendant agreed to put down the three wells and install in each of them a new fifteen horse-power electrically driven turbine pump.

As found by the trial court, the lease contained the following provisions:

" 'At the end of the third year of this lease, (lessee to) give to the party of the first part herein . . .', (that is to say lessee Minnie Stevens, plaintiff above named) 'a clear bill of sale to said pumps, showing the same free and clear of all encumbrances . . .'' and that defendant W. E. Dillon would turn over said pumps in good condition, reasonable wear and tear excepted, to plaintiff Minnie Stevens.

"It is likewise true that said lease further provided as follows: 'It is further understood and agreed with respect to the placing of the three water wells on said premises by party of the second part,' (that is to say lessee and defendant, W. E. Dillon) 'that in the event that it is hereafter mutually agreed that said property and all thereof can be properly irrigated with only two wells, that then and in that event and upon such mutual agreement party of the second part shall only be obligated hereunder to place two wells on said property instead of the three wells as hereinbefore provided.' "

After taking possession of the property defendant found a water well in good condition, the existence of which was unknown to either party at the time the lease was executed. He drilled two new wells and installed three electrically driven pumps in the three wells. One of the new wells caved in during the first 24 hours of operation and was not thereafter usable. Defendant removed the electrically driven pump so that at the end of the period of the lease there were only two wells with pumps in them delivered to plaintiff.

The trial court further found:

"It is true that lessee and defendant W. E. Dillon properly irrigated said leased premises and the whole thereof with said two wells, and that during the term of said lease and the occupancy of said premises by defendant and lessee W. E. Dillon, plaintiff and defendant above named mutually agreed that said property and the whole thereof could be properly irrigated with and from said two wells."

This finding is attacked by plaintiff as being unsupported

by any evidence of an agreement between the parties that the property and the whole thereof could be properly irrigated with and from two wells.

In 1937 defendant planted 155 acres to cotton. There is evidence supporting the conclusion of the trial judge that the whole of this acreage was sufficiently irrigated from the two wells so that about one bale of cotton to the acre was produced. During the remaining three years of the term of the lease only about half of the property was planted and irrigated, due to federal regulations limiting plantings, and the balance was left idle. During the next three years the property was leased to other parties and there is no evidence as to the acreage planted and irrigated. In 1944, 110 acres were planted to .cotton which was irrigated. The balance was planted to barley which was not irrigated.

Defendant testified that he took plaintiff to the property "in late 1937"; that he showed her the caved-in well which could not be operated; that "I said to Miss Stevens—now this was at the—at the time was well past the irrigation, the major portion of the irrigation season for that crop year. I said, 'Miss Stevens, I am covering the entire acreage with the two pumps, and getting sufficient quantities of water to those crops, and we don't need the three pumps on this property any more than we need five wheels to a wagon.' Mr. Carter: Q. What did she say? A. At that time she—I didn't press the matter any further, and I can't recall her exact reply then. But she didn't question whether—that I was getting water in sufficient quantities."

We do not understand that defendant maintains that this amounted to any agreement between the parties that two wells were sufficient to irrigate all of the property. The conclusion on his part that there was such an agreement is based on a conversation which defendant testified he had with plaintiff early in 1938 after the 80 acres, which he was permitted to plant, was prepared for planting. He detailed this conversation as follows:

"I said to Miss Stevens, 'Miss Stevens, we don't need more than two pumping plants on this property. If we have three pumping plants it will increase the assessed valuation of the property and make your taxes higher every year, and if you operate those three plants instead of two, you will always be in the wrong bracket, power bracket, as far as rates are concerned.' Q. What do you mean by that? A. Well, if you operate

a pumping plant continuously, the year through, the consumption of power will be great enough to bring it within a lower rate schedule. Q. I see. A. If you have two pumping plants sharing in that, why each plant won't consume as much power as one plant alone would consume, to cover the entire acreage. Q. I see. Then do you mean if you increased that to three, the consumption in each plant would not be sufficient to bring it down into the lower rate bracket? A. That is the idea. Q. Very well. What, if anything, did Miss Stevens say at that time, Mr. Dillon? A. And I said—now, I just want to continue my conversation with her. I said, 'I have irrigated every acre of this land adequately the previous year, sufficient water, and I don't need three pumps.' And Miss Stevens said, 'Mr. Dillon, I see that it is not necessary to have three pumping plants.' And nothing more was said about that. I considered the matter closed. I didn't ask Miss Stevens to give me a written statement to that effect. I took her word for it.''

Plaintiff did not remember any such conversation early in 1938, but thought it might have occurred, if at all, in the fall of that year. She testified that both she and defendant knew that only about half of the property could be planted to cotton and irrigated and that any such conversation, if it occurred, related to the sufficiency of the water from the two wells to irrigate the 80 acres that could be planted and irrigated and not to the irrigation of all the leased property.

She also testified that defendant had purchased a vineyard and was in financial difficulties; that at his request she postponed the delivery to her of the bills of sale of the two pumps until after the date specified in the lease for their delivery, and also postponed the drilling and equipping of the third well so as not to cause him financial embarrassment.

Plaintiff argues that defendant's statement to her to the effect that he had irrigated every acre of the land the previous year, and that he did not need three pumps, and especially her reply, "Mr. Dillon, I see that it is not necessary to have three pumping plants," must be weighed and measured by the conditions both knew were then existing, namely, that only 80 acres were to be cultivated and irrigated so that her reply could not be twisted into an assent to the proposition that the two wells furnished sufficient water to irrigate the entire 160 acres. On the other hand defendant maintains that plaintiff knew that during the 1937 cropping season he had planted and irrigated all of the 160 acres except the parts

occupied by ditches; that his statement particularly referred to that year; that her assent must be construed as a reply and assent to the exact statement made by him which amounted to an agreement that only two wells were necessary to irrigate all of the leased land, which agreement waived the third well and pumping plant.

Other arguments are made by both counsel on other questions which are merely corroborative of the foregoing and in the final analysis amount to little more than discussion of conflicts in the evidence. The important question confronting us is whether or not the foregoing testimony of defendant is sufficent to support the finding of the trial court that there was an agreement between the parties that two wells furnished sufficient water to irrigate the entire 160 acres. In this connection it should be observed that we have nothing to do here with the credibility of the witnesses or the weight to be given the evidence. Those are matters settled in the trial court. Although it may appear to us from a study of the cold record that a decided preponderance of the evidence is with the plaintiff we cannot reverse the judgment if there is substantial evidence or reasonable inferences to be drawn from such evidence supporting the findings and judgment.

 In Restatement of the Law,—Contracts, section 3, we find "Agreement" defined as follows:

"An agreement is a minfestation of mutual assent by two or more persons to one another.

"a. Agreement has a wider meaning than contract, bargain or promise. The word contains no implication that legal consequences are or are not produced. It applies to transactions executed on one or both sides, and also to those that are wholly executory. The word contains no implication of mental agreement. Such agreement usually but not always exists where the parties manifest assent to a transaction.

"b. Manifestation of assent may be made by words or by any other conduct. (See sec. 21) Even silence under some circumstances is such a manifestation. (See sec. 72)" (See, also, Civ. Code, §§ 1549, 1550, 1581.)

In *Holmes* v. *Jennison,* 14 Pet. (39 U.S.) 540 [10 L.Ed. 579], it was said:

"The word 'agreement' does not necessarily import any direct and express stipulation; nor is it necessary that it should be in writing. If there is a verbal understanding to which both parties have assented, and upon which both are acting, it is an 'agreement.'"

Measured by the foregoing rules we must conclude that the quoted conversation detailed by defendant, while furnishing meager evidence, is sufficient to sustain the finding to the effect that there was an agreement between the parties that all of the leased property can be properly irrigated with two wells so that defendant was released from his covenant to drill a third well and install a pump in it.

The judgment is affirmed.

Barnard, P. J., and Griffin, J., concurred.