[Civ. No. 4478. Fourth Dist. Jan. 5, 1953.]

EMIL E. STIENBACK, Respondent, v. BERNICE G. HALSEY, Appellant.

Drumm & Drumm and John Martell for Appellant.

Ridley C. Smith for Respondent.

GRIFFIN, J.—Plaintiff and respondent Emil E. Stienback, an officer in the United States Coast Guard, a widower aged 59 years, alleges in his complaint that he proposed marriage to defendant and appellant Bernice G. Halsey, and that she accepted his proposal; that relying upon her promise he gave her (a) diamond engagement and wedding rings valued at $1,185; (b) Hoover vacuum cleaner valued at $118.60; (c) Pontiac automobile valued at $2,400; (d) silverware valued at $756; (e) sewing machine valued at $214.45; (f) money in various amounts totaling $1,655.12; and (g) described improved real property. He then alleges that on many occasions since the engagement plaintiff requested defendant to consummate the marriage; that she refused and that he demanded the return of the property which she also refused.

Defendant's answer admitted receipt of the property; denied that plaintiff requested her to consummate the marriage; that she had refused to enter into the marriage relation; and alleged that ever since said engagement she was willing to marry plaintiff; that she set a date for the wedding and plaintiff repudiated the marriage agreement.

A trial before the court resulted in detailed findings as to each article obtained, which findings were in favor of plaintiff and against defendant's claimed defense. Judgment was that defendant reconvey the real property described; to return the car, or plaintiff would be entitled to recover its value fixed at $2,400; that he was to recover possession of the silverware, sewing machine, vacuum cleaner, and rings above mentioned, and in case delivery of the rings could not be had plaintiff was entitled to recover $1,426.64, their value. Judgment was also given for $576 on account of cash advanced. The court allowed defendant to retain certain luggage, perfumery, clothing and money which apparently were found to be gifts.

It is defendant's contention (1) that the evidence is insufficient to support its findings; (2) that the court was inconsistent in awarding defendant a part of the property obtained under the alleged agreement of marriage instead of ordering the return of all of it to plaintiff; (3) that there was a material variance or inconsistency between the pleadings, proof, findings and judgment.

Plaintiff's evidence shows that his wife died March 21, 1950, and he was quite grief stricken. He owned a little home in Santa Ana. He had placed a "For Sale" sign on it. When he arrived home from Terminal Island one evening around July 1st, defendant, who was visiting her cousin next door, came over, introduced herself to plaintiff as a real estate agent, and inquired about listing his property. He showed her the home and told her of the tragedy of losing his wife and said he did not contemplate remarriage. She ridiculed the idea and consoled him by saying there were other people, even older than he, who found considerable happiness by remarriage. She invited him next door to dinner and he declined. About 15 minutes later she asked plaintiff if he would come over and help her move a swing, which he did. She asked him to be seated and they talked a while. He then went to dinner and to a drive-in movie with her. The next morning she invited him to coffee, and he refused. She asked him if he would take her to Laguna. He did. While walking around she saw a bathing suit in a little dress shop window

which she liked. She modeled it for plaintiff and wanted to know if he liked it. He did. He then was called upon to pay $31 for it. They went from there to another dress shop. She tried on a dress and he paid $30 for it. Two or three days later they went to a show. Plaintiff proposed marriage to defendant and she said she would accept. He then asked her if she knew a reputable jeweler. She did. The next day samples of engagement and wedding rings were shown to them. Defendant picked out the rings. The next day he presented them to defendant and said: "You can consider yourself engaged." She made no comment. On the way home she took them off and said she did not want anyone to know they were engaged. She later wanted the rings exchanged for platinum. He exchanged them. She also purchased a chain that went around her neck so she could keep the rings on the chain and hide them in her bosom when she was not wearing them. A few days later she asked plaintiff if he would find her an apartment in Monrovia. He did, at $60 per month. The next day she called plaintiff to visit her and take her to Santa Ana. In a few days she asked him for a car. She said she knew a person who was leaving and would sell his car for $2,400. He borrowed $1,200 of that amount and gave her $2,400 in cash. The car needed insurance so he bought that. On August 6, he drove her to Pasadena and she spent $96 of his money "for her type of shoes." Shortly thereafter they planned a trip to Sequoia Park. She took him to a style shop, modeled a new outfit, and asked him if he would buy it for her at $306. He replied: "If you will go and get married I will buy this ensemble for you." She said: "Maybe, we will see." She accepted the suit and he paid the bill. At her suggestion, he purchased, for himself, a new suit for the wedding. Defendant complained about her luggage, and he purchased new luggage. He testified that it was their intention to get married on the trip to Sequoia Park; that they discussed going by way of Las Vegas or Reno, and marrying before going to Sequoia; that she wanted to see the park first and that after two days' visit in the park she declined to get married.

It appears that she wanted to move to Santa Ana because plaintiff complained about the added expense of the apartment. She moved to a motel. There was no car in her garage when plaintiff came to see her. He asked about the Pontiac and she informed him that "My friend has it." About August 25th, she approached plaintiff about deeding his

home property to her and said that she could live there and he could live at the base on Terminal Island and save expense; that she was now wearing the engagement ring and no longer cared if people knew that they were engaged. She had her attorney prepare a grant deed conveying the property to her. She took plaintiff to the attorney's office and the attorney asked plaintiff if he knew what he was doing. Plaintiff testified that before he had a chance to reply, defendant spoke up and said: "We are going to be married," and that he then said, before he signed the deed, that he presumed that if they were not married it would be null and void and that defendant shook her head and said: "Of course." Thereafter, he signed the deed and defendant then showed the attorney her wedding ring which she carried concealed on her neck chain.

Plaintiff thereafter advanced money to her, at her request, and started the purchase of more clothes on the "lay away plan." He said he did all of this believing that they would be married before the Christmas holidays, and that the clothing would not be delivered until then. About two weeks before Christmas he obtained the clothing, believing they were to be married. Defendant thereafter bought silverware, totaling $756.92, and had the home property decorated at plaintiff's expense. Many gifts of money and perfumery, etc., were given to defendant by plaintiff. Defendant made expensive charges against plaintiff's charge accounts. Christmas passed and no marriage took place. About December 30, plaintiff told defendant his expenses were getting so high he didn't understand how she could expect him to support her and not get married. She made no comment. Thereafter, she became enraged and said: "I suppose you want your rings back," and he said: "Yes." She stated she intended to give them back but that she "found out" she had lost them. He then asked her to return his property, both real and personal. She refused and told him to "Get out and stay out." He then told her he would have to sue for its return. A "For Sale" sign was placed on the home property and on January 4, the complaint in this action was filed.

Counsel for defendant relies upon certain testimony of plaintiff, produced upon his cross-examination, indicating that plaintiff was the one who refused to carry out the marriage agreement when he finally told defendant he was "getting sick and tired of the whole damn deal and I think that we should call it off"; that when they were originally engaged,

defendant mentioned that out of respect for his dead wife they should wait about a year before marrying; that no specific date was then set. In this respect, however, he did explain that he would have waited a year but defendant later led him to believe and they planned that they were to be married by Christmas; that he told her he could not go on supporting her when he was not married to her, and that he received no definite answer from her as to any date. Plaintiff's deposition was offered in evidence wherein defendant contends plaintiff made statements inconsistent with his present testimony. Therein he stated that sometime after the claimed loss of the rings, plaintiff asked defendant if she "actually lost them" and she said "Yes"; that she then said they could go to Nevada and get married and he told her he could "not see that" then; that he had no money left; that if she would return all of the property to him and show her good faith, he might "talk marriage"; that he had lost faith in her and could not see how their marriage could become a success, and that she said: "Well, I guess I have wasted my time." She then borrowed one dollar from plaintiff for gasoline for the automobile and left. Immediately thereafter, she secured a chattel mortgage of $1,100 on the car and endeavored to obtain a loan on the real estate. She claims she was planning a trip to Arizona for her health when served with process in this case.

Defendant's testimony is that plaintiff proposed marriage; that he agreed to wait a year before consummating it; and that plaintiff called off the marriage. Defendant's version of the meeting and proposal is somewhat at variance with the testimony of the plaintiff. However, she admits receiving the property indicated, but claims it was plaintiff's idea and was not based upon any promise of hers in regard to marriage. Plaintiff's evidence shows that defendant, during plaintiff's absence from the home premises, had at least one weekend gentleman caller (the man who previously owned the Pontiac) but defendant claims he was just an old time friend.

At the conclusion of the trial plaintiff's counsel moved the court for permission to amend the complaint to allege the value of the rings at $1,426.64, instead of $1,185, and to also allege that the marriage agreement was given up by mutual consent of both parties. Objection to the amendment was made and the court took it "under submission" with the case. Apparently, the trial court failed to rule upon

the motion other than the inference that may be drawn from the findings entered.

Section 1590 of the Civil Code provides:

"Where either party to a contemplated marriage in this State makes a gift of money or property to the other on the basis or assumption that the marriage will take place, in the event that the donee refuses to enter into the marriage as contemplated or that it is given up by mutual consent, the donor may recover such gift or such part of its value as may, under all of the circumstances of the case, be found by a court or jury to be just."

It is defendant's position that the evidence conclusively shows that there was no specific date fixed for the marriage; that she had one year from the engagement in which to perform and that plaintiff was the one who breached the agreement by "calling off" the wedding and that at all times defendant was willing to perform according to the terms of their engagement and that no property was obtained under any false promise to marry. She cites such cases as *Simonian* v. *Donoian*, 96 Cal.App.2d 259, 261 [215 P. 119]; and *Vickers* v. *Vickers*, 133 Ga. 383 [65 S.E. 885, 24 L.R.A.N.S. 1043].

The court specifically found, from the facts related, that defendant, by her acts and conduct and the acceptance of gifts, implied a promise to marry "without further delay" and that it was defendant's intention "to extract as much property from the plaintiff as possible without, at any time, having any intention of entering into the marriage relation."

Without further demonstration, the evidence fully supports these findings. In *Simonian* v. *Donoian, supra,* relied upon by appellant, the court said, at page 261:

"The breach of a marriage contract may be shown by any words or conduct although there is neither verbal nor written refusal to marry. . . ."

"The finding that appellant refused to celebrate the connubial alliance and by his conduct prevented it was amply supported by the evidence. . . ."

And on page 262: "Where any substantial evidence supports the findings it will not be disturbed on appeal. . . . And this is true even though there is sufficient support for a contrary finding." (Citing cases.) (See, also, *Campbell* v. *Arbuckle,* 4 N.Y.S. 29, affirmed 123 N.Y. 662 [26 N.E. 750]; *Holmes* v. *Jennison,* 14 Pet. (39 U. S.) 540 [10 L.Ed. 579]; *Stevens* v. *Dillon,* 74 Cal.App.2d 178 [168 P.2d 492].)

In view of these specific findings, the proposed amendment to the pleadings, as suggested, in reference to a claimed mutual agreement to give up the marriage, was unnecessary. The judgment was not inconsistent with the pleadings and proof.

■ Since the allegations and prayer of the complaint were for return of the two rings involved, the alleged value of $1,185 was only incidental thereto. The order for payment of $1,426.64 was only a condition attached in case defendant refused to comply with the judgment for their return. It is a well known rule that the unsuccessful party may deliver the property and discharge himself from so much of the judgment as is made up by the assessed value. (*Hunt* v. *Robinson*, 11 Cal. 262; 5 Cal.Jur. 212, § 41.)

■ A difference between the allegation and the proof which relates merely to quantity or degree rather than kind, is not a variance in contemplation of law. ■ A material variance is one which has misled the adverse party to his prejudice in maintaining his action or defense on the merits.

■ In case of an immaterial variance the court may direct the fact to be found according to the evidence. ■ A variance is immaterial and may be disregarded where the case was fully and fairly tried upon the merits as though the variance had not existed. (21 Cal.Jur. pp. 262-266, §§ 182, 183 and 184.)

Here, the evidence as to the value fixed by the trial court was not disputed and defendant made no point of it before the trial court. If defendant claims a material variance between the pleadings and proof no prejudicial error resulted by reason of the failure of the trial judge to rule upon the motion to amend, particularly where defendant stood mute and failed to call this fact to the attention of the trial judge. Such an objection may not now be raised for the first time on appeal. (*Robson* v. *O'Toole*, 60 Cal.App. 710 [214 P. 278]; 2 Cal.Jur. p. 278, § 89; 21 Cal.Jur. p. 253, § 177.)

■ The claim that the court made an inconsistent finding in allowing defendant to retain certain property and ordering her to return certain other property is without merit. The evidence might well indicate that these items allowed to be retained were personal gifts to defendant and were not obtained by any false promise of marriage. We perceive no prejudicial error.

Judgment affirmed.

Barnard, P. J., and Mussell, J., concurred.