[Civ. No. 27487.    Second Dist., Div. One.    May 12, 1964.]

MYRNA SHAW, Plaintiff and Appellant, v. WARREN R. SHAW, Defendant and Respondent.

Mack, Bianco, King & Eyherabide, Mack, Bianco, King, Eyherabide, Means & Cooney and Stephen Eyherabide for Plaintiff and Appellant.

Twitchell & Twitchell and Maurice F. Twitchell for Defendant and Respondent.

LILLIE, J.—Plaintiff, referred to hereinafter as "Myrna," sought partition of certain real and personal property held in joint tenancy and jointly owned with defendant, referred to hereinafter as "Warren." By affirmative de-

fense, Warren alleged that in October of 1954 he and Myrna became engaged and mutually agreed to marry the other; that relying and conditioned upon Myrna's promise, he acquired the various properties for the parties jointly and furnished all of the consideration therefor. By cross-complaint, he sought recovery of the subject properties pursuant to the provisions of section 1590 of the Civil Code.[1] The trial court denied partition and gave judgment for Warren on his cross-complaint. Myrna appeals from the adverse judgment.

There was evidence that about January 1, 1955, the parties began living together in a Santa Barbara apartment; they had met each other two years previously. Myrna was then separated from her husband, Ronald Winter, and Warren was aware of Myrna's marital status. Despite this fact, in their dealing with the public the parties represented themselves to be husband and wife. In August of 1955, Myrna obtained an interlocutory decree of divorce; it was the belief of both parties that a final decree would be obtainable in August of the following year.

In April of 1956, the parties moved to Santa Maria. There they purchased a house on Thornburg Street. Two years later, in 1958, they sold this house and used the profit from the sale to purchase a lot on East Cypress Street, likewise in Santa Maria. In both cases, title to the property was taken in the names of ''Warren R. Shaw and Myrna Shaw, husband and wife, as joint tenants.'' With the proceeds of a bank loan, a home was subsequently constructed on the East Cypress lot. This house and certain personal property are the subject matter of this action. All of the funds used for the purchase of these properties were derived from Warren's earnings.

Warren testified that he first proposed marriage in 1954. According to Warren, his proposal was accepted by Myrna with the understanding that she would first obtain a divorce: ''We decided to live together, and go ahead and get married as soon as she could get her divorce.'' Based on this contemplated marriage, Warren further testified, he placed the home on East Cypress Street, two bank accounts and a 1957

---

[1] Section 1590 provides: ''Where either party to a contemplated marriage in this State makes a gift of money or property to the other on the basis or assumption that the marriage will take place, in the event that the donee refuses to enter into the marriage as contemplated or that it is given up by mutual consent, the donor may recover such gift or such part of its value as may, under all the circumstances of the case, be found by the court or jury to be just.''

Mercury in the parties' names as husband and wife; furniture was also purchased on the same basis. After August of 1956, when such decree was obtainable, he repeatedly urged Myrna to obtain her final decree of divorce so that the parties could marry. Although she agreed to do so, no steps were taken by her to carry out Warren's wishes.[2] In this connection, Warren testified that the subject of the parties' marriage came up every month until the end of 1958. On various occasions, the parties made specific plans to marry; they were never completed, however, because of some excuse on Myrna's part—for example, she had to visit her sister "that weekend" or "she [didn't] feel good."

Late in 1958, Warren learned that Myrna was seeing another man, Yates by name. Arguments and altercations followed, and the parties separated about February 1, 1959. Subsequently Myrna married Yates, and Warren married another woman.

The present action was instituted in August of 1959. Following the conclusion of testimony, briefs were filed which developed the parties respective legal positions. Upon submission of the cause, the court filed a memorandum of opinion which compliments counsel for the ability with which the case was briefed—but observes that "the Court's decision on the facts renders many of the legal arguments moot." We quote the first two pragraphs of the opinion "The decision in this case is governed by one overriding consideration, namely, the credibility of the plaintiff as against the credibility of the defendant. The testimony of each is in sharp contradiction to that of the other on many of the controlling factual issues in the case.

"The Court believes the defendant and cross-complainant and disbelieves the plaintiff and cross-defendant. The Court is satisfied that all property placed in the names of both parties as joint tenants was done on the basis and assumption that the parties would marry. The Court is satisfied that defendant and cross-complainant sincerely desired marriage and that he did everything that could reasonably be expected of a man to effectuate it. The Court is satisfied that plaintiff and cross-defendant, while promising marriage, and allowing defendant to justifiably rely thereon, never really intended to abide by her many promises, and for this reason procrastinated and made excuse after excuse for a period of

---

[2] Unknown to the parties, Myrna's husband obtained the final decree in November of 1956.

many months, until she found another man more interesting to her than defendant and cross-complainant. This persistent course of conduct on the part of plaintiff and cross-defendant amounted to a refusal on her part to perform her promise.''

Myrna does not question the sufficiency of the evidence to support the finding that title to the various properties was taken on the assumption that the parties would marry. She points out, however, that section 1590 of the Civil Code requires as a condition of recovery thereunder that there be a *"gift"* of money or property; since there is authority for the proposition that a gift is a transfer of property without consideration (24 Cal.Jur.2d, § 4, p. 7), she argues that there could have been no gift of the subject properties if there was a valid consideration for the transactions in suit. Certain theories are advanced which assertedly sustain her position in this regard. She also contends, assuming for argument's sake the applicability of section 1590, that the trial court failed to take into consideration ''the equities of the parties'' in awarding all of the properties to Warren.

In support of her claim that there was no failure of consideration for the subject transactions, Myrna traces the parties' relationship during the four years they lived together. Thus, while Warren applied his earnings toward the acquisition of the properties, she in turn contributed her services to Warren and the household. She cites *Taylor* v. *Taylor*, 66 Cal.App.2d 390 [152 P.2d 480], where it was held that the performance of ''all normal marital personal services'' constituted consideration for a joint tenancy deed. But the facts in that case are different from those at bar. In *Taylor* there was a good faith belief by the woman that a valid marriage existed; a ''putative'' marriage comes into existence ''where one or both parties to an invalid marriage have in good faith believed such marriage to be valid.'' (*Sanguinetti* v. *Sanguinetti*, 9 Cal.2d 95, 99 [69 P.2d 845, 111 A.L.R. 342].) Since there was no such belief by either party in the present proceeding, the theory of recovery found in *Taylor* becomes wholly inapposite. Also relied upon by Myrna is *McWhorter* v. *McWhorter*, 99 Cal.App. 293 [278 P. 454]. There the parties contracted a so-called ''common-law marriage'' and by their joint efforts acquired real and personal property as joints tenants which was partitioned by the trial court. The judgment was affirmed, the opinion stating that ''it is entirely immaterial so far as the determina-

tion of this appeal is concerned, whether they lived together in good faith as husband and wife, or otherwise." (P. 295.) But, unlike our case, there was proof (as shown above) that the property was acquired by the efforts of both parties; too, the court was not confronted with the effective provision of section 1590—nor could it have been, the statute having been enacted in 1939 (10 years following *McWhorter*). More closely in point is *McCracken* v. *McCracken*, 75 Cal.App.2d 872 [171 P.2d 944], cited in appellant's closing brief, to the effect that it is immaterial whether one party has made all of the payments on property taken in the parties' names as joint tenants; again, however, the court was not called upon to consider the impact, if any, of section 1590 on the situation at hand.

Another theory of recovery or setoff is the existence of an agreement between the parties to divide the property or to compensate for services, as the case may be. "If a man and woman live together as husband and wife under an agreement to pool their earnings and share equally in their joint accumulations, equity will [preserve] the interest of each in such property." (*Vallera* v. *Vallera*, 21 Cal.2d 681, 685 [134 P.2d 761].) It has been said that "protection may be afforded under the law of contract." (Witkin, Summary Cal. Law, p. 2719.) Thus, there may be instances where the illicit relationship was not so involved in the contract as to render it illegal; the law then recognizes the contract and enforces the rights arising out of it. (*Garcia* v. *Venegas*, 106 Cal.App.2d 364, 368 [235 P.2d 89].) On the other hand, if there is no agreement between the parties concerning property acquired or compensation for services rendered while living together, the law leaves them in the position in which they placed themselves. (*Oakley* v. *Oakley*, 82 Cal.App.2d 188, 190-192 [185 P.2d 848].) Since this was not a putative marriage, the effect of the court's decision is to place Myrna in the same position as Florence Oakley. We are not directed to evidence of any agreement which would warrant the application of the principles above discussed; and even if Myrna had orally produced such evidence, the court was so convinced of her lack of credibility that it might well have disbelieved the proffered testimony—that, of course, was its prerogative.

At least two cases support the trial court's application of the law to the facts which it found: *Stienback* v. *Halsey*, 115 Cal.App.2d 213 [251 P.2d 1008], and *Priebe* v. *Sinclair*, 90 Cal.App.2d 79 [202 P.2d 577]. While Myrna, as noted earlier, does not challenge the finding that the properties

were obtained under false promises of marriage, their acquisition in such manner was litigated below. In *Stienback,* the court quoted from *Simonian* v. *Donoian,* 96 Cal.App.2d 259, 261 [215 P.2d 119] : ''The breach of a marriage contract may be shown by any words or conduct although there is neither verbal nor written refusal to marry. ...''[3] See also the further quotation from *Simonian:* ''Where any substantial evidence supports the finding it will not be disturbed on appeal. ... And this is true even though there is sufficient support for a contrary finding.'' (P. 262.) Contrary to Myrna's contention, *Stienback* is not distinguishable because, as she says, the parties were engaged for a relatively short period of time and ''all of the gifts were expressly made upon the basis of defendant's promise of marriage.'' Section 1590 contains no time limitations; furthermore, ''the intent with which an act is done is a question of fact to be determined from all the evidence in the case and a finding thereon by the trial court will not be disturbed.'' (*Braun* v. *Brown,* 14 Cal.2d 346, 354 [94 P.2d 348, 127 A.L.R. 773].)

Before passing to the next major assignment of error, in her reply brief Myrna for the first time makes the point that section 1590 ''may'' be inapplicable if an out-of-state marriage is contemplated. There are decisions holding that points thus belatedly made need not be considered. (*Wilson* v. *Board of Retirement,* 156 Cal.App.2d 195, 207 [319 P.2d 426].) Be that as it may, the only authority for the above observation is a footnote in a law review article: '' 'In this State' seems to modify 'contemplated marriage'; thus, the section may be inapplicable if the parties contemplated an out-of-state marriage, or had not contemplated any particular place. The relevance of such a geographical requirement is not apparent. ...'' (38 Cal.L.Rev. 529, 530.) While there was evidence that Warren wanted to be married in Las Vegas, Nevada, the geographical requirement is wholly out of harmony with the language and spirit of the statute. We decline to construe a statute in a way that will lead to absurd results; indeed, we know of no law which prohibits residents of this state, free to do so, from marrying in any jurisdiction they select.

Since section 1590 provides that upon proof of the breach ''the donor may recover such gift or such part of its value as may, under all of the circumstances of the case, be

---

[3]In Myrna's opening brief there is a reference to Warren's testimony that she never refused to marry him.

found by a court or jury to be just," Myrna contends that the court in the present proceeding failed to consider the equities of the parties. The judgment, she points out, gives all of the property acquired by the parties to Warren except for some items of furniture owned by her prior to the commencement of their relationship. She also points out that in suits for partition it is the general rule that all equities and conflicting claims may be adjusted upon principles which govern courts of equity. (*Demetris* v. *Demetris*, 125 Cal.App. 2d 440, 444-445 [270 P.2d 891].) In the case just cited, however, there was an affirmance; but in the present proceeding appellant is asking us to substitute our views for those of the trier of fact which clearly, under the governing statute, is vested with the discretionary power to do justice to all concerned. Despite her asserted harsh treatment, Myrna was supported by Warren for four years. ■ "The discretion was the trial judge's, not ours; and we can only interfere if we find that under all the evidence, viewed most favorably in support of the trial court's action, no judge could reasonably have made the order that he did." (*Newbauer* v. *Newbauer*, 95 Cal.App.2d 36, 40 [212 P.2d 240].) This, we are unable to say, is a case for appellate intervention.

Finally it is urged that the court erred in not applying the doctrine of "clean hands." In this connection, reference is made to Warren's action in filing with his employer a false statement that the parties were married; too, he filed a false claim with an insurance company so that Myrna, stated therein to be his wife, could recover the expenses of hospitalization; joint federal and state income tax returns were filed from 1955 to 1958; documents involving the transfer of real property were executed by the parties as husband and wife. While Warren, as indicated above, misled others, he did not mislead Myrna; furthermore, she likewise participated in such wrongful conduct. ■ "The clean hands rule does not call for denial of relief to a plaintiff guilty of any past improper conduct; it is only misconduct *in the particular transaction or connected with the subject matter of the litigation* which is a defense." (Witkin, Summary Cal. Law, p. 2793.)

The judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied June 1, 1964, and appellant's petition for a hearing by the Supreme Court was denied July 8, 1964.