[Civ. No. 14498.   Second Dist., Div. Two.   Oct. 17, 1944.]

HARRIET JANE TAYLOR, Respondent, v. FRED
TAYLOR, Appellant.

Halverson & Halverson for Appellant.

Frank L. Perry for Respondent.

MOORE, P. J.—In this action for divorce on the ground of cruelty the court found the cruelties to have been committed but annulled the marriage for the reason that respondent had a living husband at the time of her union with defendant as alleged in the cross-complaint. In his pleading defendant demanded as further affirmative relief the cancellation of a deed whereby he had vested his two properties in respondent and himself as joint tenants. This appeal is from the whole of the judgment. The principal assignment of error is the court's refusal to set aside the joint tenancy deed. In support thereof he makes three contentions, namely: (1) it was obtained by fraud, (2) it was made under the mistaken belief that plaintiff was his legal wife and would continue to abide with him and (3) it was supported by no consideration. He also assigns as errors the award of attorney's fees and the filing of findings on the complaint.

Prior to the union of this couple respondent had been the wife of another man for 32 years. They had separated in 1939 after which she resided in his home in Los Angeles and was paid $5.00 weekly for her services as his housekeeper. In that year she met appellant. They developed a mutual fondness and she announced her intention of obtaining a divorce in Nevada. Appellant proposed that she obtain a Mexican divorce as cheaper and more expeditious. In 1940 he drove her to Tia Juana, Lower California, to obtain information as to procedure and costs of obtaining a decree, and later they made a second trip to deliver her application to the Mexican attorneys and the fee which had been supplied by her husband. Pursuant to such application a decree ostensibly dissolving her existing marriage was entered by the Mexican court on July 16, 1940, and on August 3, 1940, appellant escorted respondent to Yuma, Arizona, where they celebrated a ceremonial marriage. They continued the marriage relation while she performed the customary personal services for appellant until July 11, 1942, when she left him on account of the cruelties suffered at his hands continually from the day of their departure from Yuma until the separation. Two months prior to their union appellant drew a will whereby he bequeathed all of his property to respondent. On May 12, 1942, appellant caused his attorney, who was a stranger to respondent, to prepare the conveyance vesting his two properties in himself and respondent as joint tenants. At that time both of them believed the Mexican divorce was valid and that their marriage was lawful.

The court decided that the execution of the deed was in consideration of her personal services and refused its cancellation because of his cruelties and of his having negligently and actively assisted plaintiff in obtaining the invalid decree.

### There Was No Fraud

(1) In order to warrant a reversal of the judgment it is necessary to show that the evidence and legal presumptions require findings other than those filed by the court. The finding is that plaintiff neither deceived defendant nor exercised undue influence upon him in order to gain the conveyance which he would have the court annul. The evidence contains ample support for that finding. Not a word of testimony is to be found that she made a statement of a fact or gave a promise to induce him to make the deed. Therefore, unless it can be shown that she (a) either made fraudulent statements or promises to obtain the deed or (b) exercised undue influence upon him, or (c) that she was solely responsible for the bigamous marriage, the judgment must stand.

(a) There was no fraud in the manner of respondent's obtaining the joint tenancy deed. She expressed neither a statement of fact nor made a promise to induce the conveyance. There is not the slightest evidence that she married him to acquire his property and then to leave him. On the contrary, while she was continually a dutiful wife his "cruel conduct towards her was without any reason or cause" and "against her wish and without her consent." Even though appellant had made the conveyance for the purpose of reconciling differences, the courts would be powerless to annul the deed in the absence of a showing of bad faith on the part of respondent. Also, had he made it in consideration of an implied promise on her part, her subsequent failure to fulfill such promise would not be sufficient to justify the annulment of the instrument on the ground of fraud. *(Dale* v. *Dale,* 87 Cal.App. 359 [262 P. 339].) Neither could any promise of respondent constitute the basis of an action in rescission unless it was made with no intention of performance. In order for the promise of a wife to be actionable in a suit for the cancellation of a deed from her husband there must be unequivocal evidence that she was activated by a fraudulent intent. *(Bragg* v. *Bragg,* 219 Cal 715, 721 [28 P.2d 1046].) Therefore, since respondent's conduct was not tainted with bad faith no recovery can lie against her for actual fraud.

Appellant attempts to bolster his claim of fraud by contending that the parties were bound by the rule as to confidential relations. (Civ. Code, §§ 158, 2235.) In support of this contention he cites statutes and decisions governing the conduct of those enjoying mutual confidence. (*White* v. *Warren,* 120 Cal. 322 [49 P. 129, 52 P. 723) ; *Dahne* v. *Dahne,* 49 Cal.App. 501 [193 P. 785] ; *Jackson* v. *Jackson,* 94 Cal. 446 [29 P. 957] ; *Cole* v. *Manning,* 79 Cal.App. 55 [248 P. 1065] ; *Steinberger* v. *Steinberger,* 60 Cal.App.2d 116 [140 P.2d 31].) These authorities merely hold that transactions between spouses are governed by the rules that prevail in regard to transactions between trustee and *cestui que trust;* that the burden rests upon the recipient of a gift *inter vivos* to establish the fact of gift when charged with fraud in obtaining it. They are obviously not pertinent here in view of the finding that respondent did not deceive appellant and that the deed was voluntary.

(b) The only proof offered to show undue influence was defendant's own testimony that plaintiff referred at times to news items of will contests and to the costs of such litigation and hoped that it would not happen to her. Such remarks are often uttered at the hearthstone of the innocent. If it be conceded that they stood in the relation of husband and wife from the incipiency of their wedlock, no advantage from such concession inures to appellant. The marriage relation does not of itself raise a presumption of undue influence. (*McDougall* v. *McDougall,* 135 Cal. 316 [67 P. 778].) The proof itself must show such unfairness of the transaction as will tend to establish that the wrongful spouse made use of the confidence reposed for the purpose of gaining an unreasonable advantage over his mate. (9 Cal.Jur. p. 235, § 111; *Faria* v. *Faria,* 100 Cal.App. 177 [280 P. 187].) The influence presumed to have been exercised by a wife over her husband is that which is superinduced by the marriage relation, "generated in the mind of the one by the confiding trust which he has in the devotion and fidelity of the other." Such influence is presumed to have been undue only when his confidence in her is subsequently violated. (*Brison* v. *Brison,* 90 Cal. 323, 336 [27 P. 186].) Inasmuch as respondent's conduct was honorable, we may not presume the deed in question to be void merely because the parties were dwelling together in the marriage relation. But even if there were such a presumption it would be unavailing

to appellant for the reason that both parties testified upon that subject and the court made its finding contrary to appellant's contention. ██ It cannot be said as a matter of law that any presumption would outweigh the ultimate fact found from substantial evidence. (*Seeberg* v. *Seeberg*, 9 Cal. App.2d 450 [50 P.2d 450].)

██ (c) Appellant was not defrauded by respondent's marrying him while she had an undivorced living husband. For eleven months prior to their union they had discussed the matter of her obtaining a divorce. He argued that a Mexican divorce would be legal, less expensive and more readily obtainable. That he instigated the Mexican proceeding is established by the evidence which warranted the finding that he actively aided plaintiff and was equally culpable with her in embarking upon the marriage without investigating the legality of a Mexican decree. That she was induced by his blandishments to hasten their marriage is established by his eager pursuit of her and by his execution of his last will in which he designated her as sole beneficiary. His honest belief in the legality of the Mexican decree does not obviate his responsibility for encouraging its procurement. His persistency after respondent had expressed doubts of its legality indicates a wilful disregard of the potentially unfortunate consequences. Having thus misled her he is in no position to demand equitable relief from his own wilful acts done pursuant to the unlawful union.

### There Was No Mistake

██ (2) There is nothing in the record to indicate that appellant made the conveyance through mistake. He had no purpose in mind other than to share his possessions with respondent. He had even bequeathed them to her by his prenuptial will. His own testimony is that in a conversation on May 11, 1942, she reminded him of his promise to make her a partner in the Venice property and that his reply was "Then, tomorrow. I will surprise you." Appellant not only executed the deed under the eye of his attorney, but himself filed it for recordation the same day, thereby effectuating the purpose declared in his will of June, 1940. If his alleged mistake lay in his misconception of the validity of the Mexican decree, that was itself the fruitage of his own mismanagement and negligence. ██ Equity will not grant relief from mistake in opinion or conclusion concerning an uncertain future occurrence. (*Callan Court Co.* v. *Citizens &*

*Southern National Bank,* 184 Ga. 87 [190 S.E. 831, 854].) Neither will equity harken to a plea of **mistake where** the condition from which the suitor seeks relief was the result of his own wilfulness. Appellant's conveyance under any view of the evidence is not such a mistake as is recognized as a basis for rescission or cancellation. To make a mistake justiciable it must have been mutual or it must have been attended by the fraud of the adversary party. *(Belt* v. *Mehen,* 2 Cal. 159 [56 Am.Dec. 329].) A complainant will be denied relief in equity where his only showing is his own inexcusable neglect (9 Cal.Jur. p. 242, § 115) or when he has failed to make inquiry or had within his reach the true state of facts. *(Duke of Beaufort* v. *Neeld,* 12 Cl. and F. 248, 264; 21 C.J. 89; 30 C.J.S., § 47, p. 375.)

### There Was Consideration

(3) If a consideration was necessary to support the joint tenancy deed plaintiff alleged that it was made for a good consideration and the court found in response thereto that "plaintiff was a faithful and dutiful wife to defendant," that "plaintiff performed all normal marital personal services for defendant" during coverture, and that the deed was made in consideration thereof. Not a criticism of respondent's marital behavior appears. It was neither the Mexican decree that induced the dissolution of their ties nor deceit or unkindness on the part of respondent. It was appellant's unprovoked cruelties. She served his needs while she endured his continual abuses. Either might provide consideration for the conveyance. (Civ. Code, § 1605.) The law does not weigh the quantum of the detriment suffered by the promisee any more than it would weigh the quantum of the benefit received by the promisor. *(Whelan* v. *Swain,* 132 Cal. 389 [64 P. 560].)

Where the parties to a putative marriage have accumulated no community estate, upon an annulment of the invalid marriage it is proper to award the de facto wife a money judgment for her services. "The law raises the promise to pay in such cases." *(Sanguinetti* v. *Sanguinetti,* 9 Cal. 2d 95 [69 P.2d 845, 111 A.L.R. 342].) There was no attempt by appellant to establish the value of respondent's services to him. Any valid though slight consideration will support the most onerous obligation. (17 C.J.S. 474.) In the absence of fraud the inadequacy of consideration will not defeat a contract. *(Rusconi* v. *California Fruit Exchange,* 100 Cal.App. 750, 754 [281 P.84].)

Appellant asserts that respondent married him in order to get his property and then to abandon him. There is not the slightest evidence to warrant such argument. It is contrary to the finding of her fidelity. It is contrary to her character as exhibited by her living peacefully under the roof of one man for more than 30 years. After her separation in the 32nd year of her wedded life she continued in the menial service of the husband for $5.00 weekly. A woman of such timidity would not conceive and carry out so repulsive a scheme as that ascribed to her. Rather would she have continued in the enjoyment of her home and of the affection of which appellant had given her repeated assurance.

But if respondent's case had rested solely upon her ability to show the payment of a consideration for the deed and if the court had found none, still appellant could not prevail. If there had been no services performed during their 23 months together her right to accept a gift from appellant could not be denied her. A voluntary gift divests the donor of his property and invests the donee with title irrevocably. (*Pullen* v. *Placer County Bank,* 138 Cal. 169 [66 P. 740, 71 P. 83, 94 Am.St.Rep. 19]; *Saba* v. *Cleveland Trust Co.,* 23 Ohio App. 163 [154 N.E. 799]; *York's Ancillary Administrator* v. *Bromley,* 286 Ky. 533 [151 S.W.2d 28, 32]; *Neal* v. *Neal,* 194 Ark. 226 [106 S.W.2d 595]; *Allen* v. *Hendrick,* 104 Ore. 202 [206 P. 733]; *Pilkington* v. *Wheat,* 330 Mo. 767 [51 S.W.2d 42].) It must therefore follow that since there was neither actual fraud nor undue influence on the part of respondent in obtaining the joint interest in appellant's property her title thereto is secure, either because the conveyance was made out of consideration for her twenty three months of service as a wife, as found by the court, or because it was a voluntary gift. In either view respondent is secure in her holding.

However, the judgment before us is not an award, on any account, of property to respondent. It is not primarily an attempt to determine the financial or material obligations one owes the other. It is a denial of relief for equitable reasons. The court below properly declined to grant appellant's demand to cancel the deed because his demand lacked equity. For his collaboration with respondent in obtaining the decree of the void marriage the court acted within its jurisdiction and with sound discretion in denying the cancellation. Whether appellant was guilty of in-

stigating the Mexican proceedings or was grossly negligent in encouraging them, he was no less culpable than respondent in contracting the void marriage. Under the clean hands maxim he may ask nothing of equity save that specifically authorized by statute, to wit, an annulment. (Civ. Code, § 82.)

Complaint is made of the court's award of attorney's fee to counsel for respondent. At the hearing of the order *in limine* for counsel fee after ordering the payment of a modest sum the court reserved jurisdiction to determine the balance of the fee at the time of trial. A potential contest was in the offing. At the close of the trial of a vigorous controversy the court ordered the payment to plaintiff's counsel the $77.50 rentals which appellant had collected from property owned in joint tenancy. Such an award was within the discretion of the trial judge. We find no abuse thereof.

The filing of findings on the allegations of the complaint constitutes no error. Albeit the court was required to annul the void marriage, the union of the parties and their dwelling together for 23 months had created a situation out of which had stemmed definite rights and obligations. Fairly to adjudicate such rights it was incumbent upon the court to determine the conduct of the parties before and after the celebration of the nuptials. If such determination was in fact made, no prejudice to appellant could have resulted by recording it in findings.

The purported appeal from the order denying appellant's motion for a new trial is dismissed.

The judgment is affirmed.

McComb, J., concurred. Wood (W. J.), J., concurred in the judgment.

A petition for a rehearing was denied November 16, 1944.