[Civ. No. 8919. Fourth Dist., Div. Two. Feb. 17, 1969.]

MARVIN E. LAWRENCE et al., Plaintiffs and Appellants, v. ROY V. SHUTT et al., Defendants and Respondents.

Wenke, Pilskaln, Kemble & Marx, Paul Frederic Marx, O'Melveny & Myers, Allyn O. Kreps, Girard E. Boudreau, Jr., and John R. Hetland for Plaintiffs and Appellants.

Best, Best & Krieger and John H. Barnard for Defendants and Respondents.

FOGG, J. pro tem.*—This appeal concerns the issues of the validity of a release clause in a purchase money deed of trust, and if invalid, whether or not rescission of the entire sales transaction was justified. The action was brought by plaintiffs Marvin E. Lawrence, Beverlie A. Lawrence, and Marvin E. Lawrence Company (Lawrence) and S. V. Hunsaker & Sons, Inc. (Hunsaker) for specific performance of the release clause, for a declaration of the rights and obligations of the parties under the release clause, and to quiet title to the property as to which the release was demanded. Plaintiffs also included an alternative cause of action for damages which

---

*Assigned by the Chairman of the Judicial Council.

they elected not to pursue at the time of trial, and a fifth cause of action for reformation of the release clause to insert the inadvertently omitted legal description of the "80-acre parcel" (see footnote 1, *infra*) to which defendants stipulated at pretrial. Roy V. Shutt and Winifred Shutt (Shutt), sellers of the property and beneficiaries under the deed of trust, answered the complaint by denying the validity of the release clause, counterclaimed for rescission of the transaction of sale, and sought to set aside the conveyance to Lawrence. After a court trial, judgment was entered in favor of the Shutts rescinding the agreement of sale and declaring the grant deeds and deeds of trust to be void, ordering the grant deeds and deeds of trust to be cancelled, declaring the Shutts to be the owners of said property, and further ordering the Shutts to restore to plaintiffs the $250,000 paid by the latter under said agreement.

Plaintiffs filed motions for a new trial and to vacate the judgment; however, the motions were denied. This appeal is from the judgment.

In March 1963, the Shutts were the owners of 1,280 acres of land situated, for the most part, in Riverside County at the boundary between Riverside and San Bernardino Counties. Except for the Shutt residence and accompanying farm structures, the property is unimproved. Access from County Line Road, a public road, can only be had from the east, and there are no public or improved roads on the property. The land is very hilly and rough except for the most easterly 80 acres.

By escrow instructions, dated March 15, 1963 and March 22, 1963, the Shutts agreed to sell the 1,280 acres to Dr. Gerald Rutten for the total sum of $1,175,000 of which $250,000 was to be in cash and the balance of $925,000 to be evidenced by a promissory note secured by a first deed of trust. In these instructions, Rutten reserved the right to assign his interest in said transaction without further approval of the seller. The instructions also contained a provision which later was incorporated in the deeds of trust and which provided for the manner in which parcels of the real property would be released from the lien of the deed of trust.[1] This clause was

---

[1] "As used herein the term '80-acre parcel' shall refer to and mean that certain portion of the above-described real property which is described as follows: (Here will be inserted a legal description of the portion of the property subject to this escrow, which is generally described as the most Easterly 80 acre rectangular piece of Section 15, Township 2 South, Range 2 West, S.B.B. & M., bounded on the North and partially on the East by Avenue 'L').

"As used herein the term '1,200-acre parcel' shall refer to and mean

drafted in its entirety by the attorney for the Shutts. It was subsequently revised so as to break down the property from two to three sectors for release purposes. The three sectors became the "80-acre parcel" having a release price of $5,000 per acre; that portion of the 1,200-acre parcel lying in Section 15, Township 2 South, Range 2 West, S.B.B. & M. (containing 240 acres) having a release price of $2,000 per acre; and the remainder of the 1,200-acre parcel (960 acres) having a release price of $1,000 per acre.

---

all of the real property covered by this deed of trust, with the exception of the said 80-acre parcel.

"Provided Trustor is not in default hereunder, Beneficiary agrees on behalf of himself, his heirs, devisees, successors and assigns by the acceptance of this instrument, and the promissory note secured hereby, from time to time to release from the lien of this deed of trust portions of said real property, (that is, to cause partial reconveyances of such portions) subject to the following terms, conditions, and agreements.

"(1) Payment upon the unpaid principal balance of the note secured by this deed of trust, of amounts equal to the total number of acres to be released multiplied times the release prices hereinafter mentiond. Notwithstanding the foregoing, property having a release price value of $150,000 (as hereinafter provided) shall be released without payment of any sum upon written request thereof from trustor to beneficiary.

"(2) Property in the 80-acre parcel shall be released on the following terms and conditions:

"(a) The release price for an acre to be released shall be $5,000.00 per acre.

"(b) No portion of the 80-acre parcel smaller than thirty acres shall be released with the exception of the last parcel to be released.

"(c) Any portion of the 80-acre parcel released shall be contiguous to a portion thereof previously released; provided that the first portion to be released shall lie on either the North or the South boundary of the 80-acre parcel.

"(d) Any portion of the 80-acre parcel to be released shall be bounded on the East by the East line of the 80-acre parcel, and on the West by the West line of the 80-acre parcel.

"(e) Concurrently with and as a condition of release of the last portion of the 80-acre parcel to be released, Trustor shall establish by easement, dedication or otherwise, a right of way and street at least 80 feet wide in, over, and across the 80-acre parcel, for access to the 1,200-acre parcel by pedestrian and vehicular traffic, including public utility lines.

"(3) Portions of the 1,200-acre parcel may be released upon the following terms and conditions:

"(a) The acreage release price for each acre to be released in Section 15, Township 2 South, Range 2 West, S.B.B. & M., except in the 80-acre parcel shall be $2,000.00;

"(b) The acreage release price for each acre to be released in the remainder of the 1,200-acre parcel shall be $1,000.00;

"(c) Property released shall be contiguous to that previously released;

"(d) Any parcel released shall be no smaller than 40 acres;

"(e) No release of any portion of the 1,200-acre parcel shall be made if the effect thereof would be to prevent reasonable access to the unreleased portion of the 1,200-acre parcel, unless concurrently with such release Trustor shall establish by easement, dedication, or otherwise, a right of way and street in, over, and across the parcel to be

. By escrow instructions dated September 16, 1963, the time for close of escrow was extended to January 15, 1964, and it was provided that the Shutts could retain possession, rent free, for 12 months following the month in which escrow closed, of the residence and approximately 25 acres in the southeasterly portion of the property.

By escrow instructions dated January 15, 1964, the escrow was amended to extend the time for closing to August 15, 1964, and to increase the total purchase price to $1,280,000. The down payment was not increased, but the note securing the balance of the purchase price was increased to $1,030,000, interest at 6 percent per annum payable semi-annually, with principal payable in 10 equal annual installments, commencing three years from the close of escrow.

On March 20, 1964, Rutten sold, assigned and transferred all right, title, and interest in the escrow to Marvin E. Lawrence for agreed cash payments totaling $65,000 and a trust deed to be given at close of escrow for the balance of the purchase price of $512,000. Lawrence in turn assigned his rights to himself and his wife and Marvin E. Lawrence Company, a corporation. Notice of the assignment was given to the escrow holder, Security Title Insurance Company, on May 12, 1964, accompanied by an acceptance of the assignment and the escrow instructions, and a ratification of all acts performed by Rutten. No notice of the assignment was given the Shutts because the escrow instructions gave Rutten the right to assign his interest without the Shutts' approval.

On June 24, 1964, the escrow holder forwarded to the Shutts a map and legal description of two parcels, totaling 143.5 acres, which the buyers had requested to be excluded from the deed of trust pursuant to the release clause. The Shutts refused to release the parcels requested and, on August 13, 1964, the escrow closed and the various grant deeds and trust deed were recorded. On the same morning, plaintiffs commenced this action and attached the proceeds of the escrow as well as the bank accounts of the Shutts. Plaintiffs

released for access to the unreleased portion of the 1,200-acre parcel by pedestrian and vehicular traffic, including public utility lines.

"(4) All payments made for release of property shall be applied against the next installment(s) of principal falling due on the promissory note secured hereby.

"(5) Nothing herein shall be deemed nor shall give Trustor the right nor shall Trustor have the right to make any payment on the principal of said note in the year in which said note is dated.

"Beneficiary hereby authorizes the Trustee herein to sign as such Trustee any and all subdivision maps prepared and filed in connection with the subdivision of the real property covered hereby.''

also demanded a partial reconveyance of the two parcels previously requested to be omitted from the trust deed; however, this request was refused by the Shutts. From August 13, 1964, the two parcels for which releases were sought were owned by S. V. Hunsaker & Sons, Inc., and Marvin E. Lawrence, joint venturers doing business under the firm name of S.V.H. & L.C. Development Co., which joint venture became effective July 10, 1964. The $250,000 down payment which was eventually received by the Shutts was paid by Hunsaker.

Some three or four months before the escrow was to close, the Shutts began expressing dissatisfaction with the release clause. They changed counsel twice prior to the close of escrow, and again following the close of escrow. Just prior to close of escrow, the Shutts, through their then counsel, indicated their belief that the release clause was unenforceable in its present form as contended by the buyers, and that it was their interpretation that the property first eligible for release was the 80-acre parcel. However, they did not specifically object to the closing of escrow.

More than a month after escrow closed, the Shutts mailed to Lawrence a notice of rescission setting forth the following grounds: mistake, invalidity of the agreement, failure of consideration, fraud, and the failure of the escrow to close according to instructions. The grounds of fraud and improper closing of the escrow were abandoned by time of trial.

By their pretrial statement, dated February 16, 1965, the Shutts' contentions were stated for the first time that they denied the original request for release because it failed to comply with the express provisions of the release clause in two respects: (1) "Parcel 2" was less than the required 40 acres in size, to-wit, only 6.5 acres; (2) its effect would be to deprive the Shutts of reasonable access to unreleased portions of the land.

On May 8, 1965, plaintiffs made a second request for release adding to the two parcels previously sought to be released the 73.7 acres immediately north of "Parcel 2." Evidence of this second request was admitted by the trial judge for the limited purpose of showing the "intention of the defendants (the Shutts) toward the entire transaction."

The attachments were released on September 18, 1964, and at that time the Shutts gave their notice of rescission and tendered all benefits received.

During the entire period from the close of escrow to date of judgment, the Shutts denied Lawrence's ownership and

interfered with his access, use and development of the property. Lawrence sought and obtained a temporary injunction against further interference and harassment by the Shutts with access to and use of said property by Lawrence, his agents, employees and representatives. Ultimately, Mr. Shutt was incarcerated three days for contempt of this court order.

The Shutts also refused to accept interest on the deed of trust and continued to pay real property taxes after the close of escrow.

In its findings of fact, the trial court found, in pertinent part, as follows:

"19. At the time of entering into the escrow instructions defendants SHUTT believed that property would be released from the provisions of the Deed of Trust in such a manner that the property in the "80 acre parcel" would first be released, and that thereafter generally rectangular shape parcels of 40 acres or more, each proceeding from one boundary of the property parallel to adjacent boundaries towards the center of the property, would be released; and defendants would not have agreed to a provision for partial release and would not have agreed to the provisions for the purchase relative to payment of interest only on the promissory note secured by the Deed of Trust for a period of three (3) years, but for such relief.

"20. The property for which plaintiffs sought a release, described in Exhibit 'H' and attached to plaintiffs' complaint, did not conform to the requirements for release in that parcel 'B' thereof is smaller than 40 acres; to wit, 6.5 acres.

"21. Release of the parcels as requested by plaintiffs would not leave reasonable access to portions of the 1200 acre parcel.

"22. Release of the parcels requested by plaintiffs would depreciate the value of the remaining portion of the subject property and cause it to be of less value than the balance due upon the note secured by the Deed of Trust.

"23. Plaintiffs asserted in open court that they had the unrestricted right to seek releases that wind around in any fashion they wanted, and that after they had taken the part that was suitable for development they could leave defendants with the hilltops with no security at all for the purchase price; and that they had the right to select for release a piece of property that merely touches a parcel previously released, and that they would stand or fall on that interpretation of the 'release clause'.

"24. Interpreted in the manner advanced by plaintiffs herein, the provisions of the escrow instructions and the Deed of Trust relating to partial release would not be just or reasonable to defendants and the consideration to defendants for the entire transaction under such interpretation would be inadequate.

"25. The manner in which the plaintiffs would exercise the purported 'release clause' is unreasonable and arbitrary and so threatens to destroy defendants' security interest in the property as to amount to the total failure of consideration.

"26. The manner in which the plaintiffs seek to have property released from the trust deed described in the First Amended Complaint is inequitable, unfair, harsh, unjust, oppressive and, if carried out, would impose an undue hardship on the defendants.

"27. The provisions in the escrow instructions and in the Deed of Trust for the release of portions of the property from the lien or charge of the Deed of Trust are so vague and indefinite and uncertain that the Court is unable to determine the manner in which parcels of the property, if any, should be released.

"28. The parties to the escrow instructions had no agreement between them as to any special meaning to be given to the language of the agreement applicable to releases of portions of the property from the Deed of Trust; nor did defendants have any such agreement with plaintiffs, or either of them.

"29. The provisions in the escrow instructions and in the Deed of Trust for the release of portions of the property from the lien or charge of the Deed of Trust are so vague and indefinite and uncertain as to be unenforceable and to render the entire sale transaction void and of no force and effect.

"30. The provisions in the escrow instructions and in the Deed of Trust for the release of portions of the property from the lien or charge of the Deed of Trust are so vague and indefinite and uncertain as to be violative of the provisions of Section 1624, Subdivision 4 of the California Civil Code.''

Plaintiffs' contentions upon appeal may be summarized as follows:

1. This release clause which gives to the buyers the right to select acreage for release is specifically enforceable in equity.

(a) It is not uncertain nor indefinite, nor does it constitute merely an agreement to agree.

(b) It is not unjust nor unreasonable.

2. Even if this release clause is unenforceable, it was error to declare the conveyance itself invalid.

3. The unilateral misunderstanding of the Shutts as to the meaning of the release clause will not justify rescission of the entire transaction based upon unilateral mistake.

4. A release clause is not an agreement for the sale of real property within the statute of frauds.

5. The rescission was defective in that the Shutts failed to join an indispensable party—Dr. Rutten.

6. The rescission was defective because the property sought to be released was owned by a bona fide purchaser—Hunsaker.

In support of the judgment, defendants argue that:

1. This release clause is void because it is indefinite and uncertain.

2. If not void, the release clause is so indefinite and uncertain that it will not support an action for specific performance.

3. If not void, the release clause is not specifically enforceable because it is not just and reasonable and is not supported by adequate consideration.

4. The release clause is an integral part of the transaction and its invalidity renders the entire transaction void.

5. The Shutts are entitled to rescission of the entire transaction based upon unilateral mistake.

6. Hunsaker is not a bona fide purchaser.

7. Rutten is not an indispensable party.

Initially, plaintiffs maintain the trial court erred in determining that the provisions of the escrow instructions and the deed of trust calling for the release of portions of the property were so vague, indefinite and uncertain as to be unenforceable and hence rendered the entire sale transaction void and of no force or effect.

[1] The parties concede that there is no evidence beyond the written terms of the release clause from which the court can ascertain the true intent of the parties. Testimony was received from the original buyer, Dr. Rutten, the Shutts, their counsel who drafted this release clause, and their real estate agents and accountant; but such extrinsic evidence was not helpful in determining what was intended by the language used in the release clause. (See *Pacific Gas & Elec. Co.* v. *G. W. Thomas Drayage & Rigging Co.*, 69 Cal.2d 33 [69 Cal. Rptr. 561, 442 P.2d 641].) In any event, as an appellate court, we are not bound by the trial court's construction of the release clause, if such construction is erroneous. (*Parsons* v.

*Bristol Dev. Co.,* 62 Cal.2d 861, 865-866 [44 Cal.Rptr. 767, 402 P.2d 839].)

■ It is well settled that courts will give written agreements, if reasonably possible, a construction which will result in their being enforceable contracts. (Civ. Code, § 1643; *Roy* v. *Salisbury,* 21 Cal.2d 176, 184 [130 P.2d 706]; *Long Beach Drug Co.* v. *United Drug Co.,* 13 Cal.2d 158, 166 [88 P.2d 698, 89 P.2d 386]; *Burns* v. *Peters,* 5 Cal.2d 619, 623 [55 P.2d 1182]; *Bradner* v. *Vasquez,* 102 Cal.App.2d 338, 342, 343 [227 P.2d 559].) ■ " 'That a greater degree or amount of certainty is required in the terms of an agreement which is to be specifically executed in equity than is necessary in a contract which is the basis of an action at law for damages' has often been declared." *(Long Beach Drug Co.* v. *United Drug Co., supra,* at p. 164; *Boyd* v. *Bevilacqua,* 247 Cal.App.2d 272, 287-288 [55 Cal.Rptr. 610].)

■ In order for a court of equity to decree that an obligation is specifically enforceable the terms of the contract must be complete and certain in all particulars essential to its enforcement. (*Magna Dev. Co.* v. *Reed,* 228 Cal.App.2d 230, 235-236 [39 Cal.Rptr. 284]; *Bonk* v. *Boyajian,* 128 Cal.App. 2d 153, 155 [274 P.2d 948]; *Colorado Corp., Ltd.* v. *Smith,* 121 Cal.App.2d 374, 376 [263 P.2d 79]; Civ. Code, § 3390, subd. 5.) The agreement must not only contain all the material terms but also express each in a reasonably definite manner. (*Spellman* v. *Dixon,* 256 Cal.App.2d 1, 3 [63 Cal. Rptr. 668]; *Magna Dev. Co.* v. *Reed, supra.*) These principles have been repeatedly applied to deny specific performance of agreements which are incomplete, indefinite or uncertain with respect to the terms of payment of deferred balances or the terms of encumbrances representing such deferred balances. (*Mariposa Commercial etc. Co.* v. *Peters,* 215 Cal. 134, 140 [8 P.2d 849]; *Buckmaster* v. *Bertram,* 186 Cal. 673, 676 [200 P. 610]; *Magna Dev. Co.* v. *Reed, supra,* 228 Cal.App.2d 230, 236; *Mueller* v. *Chandler,* 217 Cal.App.2d 521, 524 [31 Cal. Rptr. 646]; *Mills* v. *Skaggs,* 64 Cal.App.2d 656, 658-659 [149 P.2d 204].) Recently these principles have been applied in denying specific performance to subordination agreements when the subordination provisions have been found uncertain and incapable of ascertainment by reference to an objective standard. (*Handy* v. *Gordon,* 65 Cal.2d 578 [55 Cal.Rptr. 769, 422 P.2d 329]; *Spellman* v. *Dixon, supra,* 256 Cal.App.2d 1; *Stockwell* v. *Lindeman,* 229 Cal.App.2d 750 [40 Cal.Rptr.

555] ; *Magna Dev. Co.* v. *Reed, supra; Gould* v. *Callan,* 127 Cal.App.2d 1 [273 P.2d 93].)

As stated by the Supreme Court in *Handy* v. *Gordon, supra,* at p. 581: ". . . an enforceable subordination clause must contain terms that will define and minimize the risk that the subordinating liens will impair or destroy the seller's security. [Cases cited.] Such terms may include limits on the use to which the proceeds may be put to insure that their use will improve the value of the land, maximum amounts so that the loans will not exceed the contemplated value of the improvements they finance, requirements that the loans do not exceed some specified percentage of the construction cost or value of the property as improved, specified amounts per square foot of construction, or other limits designed to protect the security. Without some such terms, however, the seller is forced to rely entirely on the buyer's good faith and ability as a developer to insure that he will not lose both his land and the purchase price."

In the instant case the trial court was clearly, and with good reason, concerned about the ambiguity of the operation of the release clause. Plaintiffs had asserted in open court that the word "contiguous," as used in the release clause, gave them the unrestricted "right to select for release a piece of property that merely touches" and hence they could take that portion of the property suitable for development and leave defendants with the hills and gullies. Plaintiffs argued below and argue here that the word "contiguous" is fundamentally certain in meaning and that, therefore, the agreement is not void for indefiniteness and uncertainty. Plaintiffs cite *Ganiats Constr., Inc.* v. *Hesse,* 180 Cal.App.2d 377, 385 [4 Cal.Rptr. 706], wherein the court said that " 'contiguous' realty need have only a minimum common boundary with the adjacent property" as authority for the proposition that the word "contiguous" is fundamentally certain in meaning. However, in *Ganiats* the appellate court also said (pp. 384-385) in considering an option giving the optionee the right to purchase 10 acres of property and thereafter upon certain terms and conditions the "next contiguous thirty (30) acres;" thereafter upon further terms and conditions the "next contiguous seventy (70) acres" and the "next contiguous one hundred twenty (120) acres:" "The reference to the acreage in the designation 'the next contiguous thirty acres' is not in itself a self-sufficient description. An acre is '[a] quantity of land containing 160 square rods of land, in

whatever shape.' (Black's Law Dictionary (4th ed., 1951), p. 42.) An acre can be a circular, square, triangular, irregular, broad or narrow strip of land. Indeed, an acre is not a concrete form; it is a term of quantity and it can be applied to land in all manner of patterns.

"As we shall point out *infra* in more detail, the crucial term 'next contiguous thirty acres' does not in itself specify the area covered by the option. In the first place the contiguity of *one acre* 'next' to the westerly boundary would literally suffice to fulfill the definition, leaving open and unspecified the location of the remaining acreage. Even if we place all the 30 acres as close to the westerly boundary as possible: that is, the maximum number of acres adjacent to the westerly line, the remaining acres of the area may still take various forms or shapes, and the location of the easterly boundary remains indefinite." In the case at bench the release clause was even more indefinite and uncertain; it provided only that any parcel of property no smaller than a certain number of acres released must be contiguous to that previously released.

While plaintiffs may be technically correct in asserting that the word "contiguous" is certain in meaning, it is apparent that the word, as used in this release clause, renders the release clause uncertain and unreasonable in equity on the ground that the provision placed the sellers in a position where they could be deprived of all the choice land without adequate protection that they would ever be compensated by the buyer for the remainder. (See *Handy* v. *Gordon, supra,* 65 Cal.2d 578, 581; cf. *Magna Dev. Co.* v. *Reed, supra,* 228 Cal. App.2d 230, 243-244.) The fact that the release clause is not sufficiently certain for specific performance does not, however, require us to invalidate the entire agreement. (See *Norris* v. *Lilly,* 147 Cal. 754, 756-757 [82 P. 425, 109 Am.St. Rep. 188]; *Schomaker* v. *Osborne,* 250 Cal.App.2d 887, 893 [58 Cal.Rptr. 827]; *Brooks* v. *Allard,* 244 Cal.App.2d 283, 290-291 [53 Cal.Rptr. 82]; *Leider* v. *Evans,* 209 Cal.App.2d 696, 699-701 [26 Cal.Rptr. 123].)

Defendants' reliance upon *Spellman* v. *Dixon, supra,* 256 Cal.App.2d 1, and *Magna Dev. Co.* v. *Reed, supra,* 228 Cal.App.2d 230, for the proposition that the uncertainty of the release clause renders the entire transaction void is misplaced for the reason that in the instant case the escrow had closed, the grant deeds and trust deed were recorded, and thus the agreement had been executed. (Civ. Code, § 1661;

764

*Smith* v. *Allen,* 68 Cal.2d 93, 95 [65 Cal.Rptr. 153, 436 P.2d 65]; *Estate of Dwyer,* 159 Cal. 664, 675 [115 P. 235].) Defendants concede, and the trial court found, that the escrow properly closed. The sale was thus complete at that moment. Since the property sold was described with detailed certainty, the agreement to convey the realty was not incomplete. (See *Carlson* v. *Richardson,* 267 Cal.App.2d 204 [72 Cal.Rptr. 769]; *Calvi* v. *Bittner,* 198 Cal.App.2d 312, 321 [17 Cal.Rptr. 850].)

The plaintiffs here, unlike the plaintiffs in *Spellman* and *Magna,* were not attempting to have the court decree that a contract existed, but were merely attempting to enforce the release clause provision. While the uncertainty of the release clause precludes specific performance of the provision, the contract was nevertheless certain enough to bind defendants to the obligation. (*Schomaker* v. *Osborne, supra,* 250 Cal.App. 2d 887, 893; *Eastwood Homes, Inc.* v. *Hudson,* 161 Cal.App. 2d 532, 540 [327 P.2d 29].) ▮ " 'The law does not favor but leans against the destruction of contracts because of uncertainty; and it will, if feasible, so construe agreements as to carry into effect the reasonable intentions of the parties if that can be ascertained.' " (*California Lettuce Growers, Inc.* v. *Union Sugar Co.,* 45 Cal.2d 474, 481 [289 P.2d 785, 49 A.L.R.2d 496], quoted in *Ontario Downs, Inc.* v. *Lauppe,* 192 Cal.App.2d 697, 703 [13 Cal.Rptr. 782].)

▮ In the case under review, the defendants contended, and the trial court concluded, that the unilateral misunderstanding of the defendants as to the meaning of the release clause justified rescission of the entire transaction based upon unilateral mistake. The "mistake" which the trial court relied upon in decreeing rescission was the alleged belief of defendant Roy V. Shutt that the releases would first be in the 80-acre parcel and that the parcels to be released would be perpendicular parcels, parallel in shape and working from one boundary to the other.

▮ Rescission of a contract for mistake, like reformation, is usually founded upon either mutual mistake of the parties or a mistake by one induced or contributed to by the other's fraud. (*California Trust Co.* v. *Cohn,* 214 Cal. 619, 626 [7 P.2d 297]; *Taylor* v. *Taylor,* 66 Cal.App.2d 390, 398 [152 P.2d 480]; 33 Cal.Jur.2d, p. 318, § 4.) It is clear, however, that a court, under its equitable power, does have the right to rescind a contract for the purely unilateral mistake of one contracting party not induced or contributed to by the

other party. (*Goodrich* v. *Lathrop,* 94 Cal. 56 [29 P. 329, 28 Am.St.Rep. 91] ; *Lepper* v. *Ratterree,* 98 Cal.App. 245, 255 [276 P. 1037] ; *Forest Lawn Memorial Park Assn.* v. *De Jarnette,* 79 Cal.App. 601, 604 [250 P. 581] ; 59 A.L.R. 809 and cases cited.) Nevertheless, it is equally clear that in the interest of preserving some reasonable stability in commercial transactions the courts will not set aside contractual obligations, particularly where they are embodied in written contracts, merely because one of the parties claims to have been ignorant of or misunderstood the provisions of the contract. (*Roller* v. *California Pac. Title Ins. Co.,* 92 Cal.App.2d 149, 154 [206 P.2d 694] ; *Taylor* v. *Taylor, supra,* pp. 397-398.) This is especially true where the contractual obligation sought to be set aside has been executed by the complainant without the exercise of reasonable care. (*Mesmer* v. *White,* 121 Cal.App.2d 665, 674 [264 P.2d 60] ; *Roller* v. *California Pac. Title Ins. Co., supra,* 92 Cal.App.2d 149; *Taylor* v. *Taylor, supra,* 66 Cal.App.2d 390.)

 Section 1577, Civil Code, defines a ''mistake of fact'' as follows: ''Mistake of Fact. Mistake of fact is a mistake, not caused by the neglect of a legal duty on the part of the person making the mistake, and consisting in :

''1. An unconscious ignorance or forgetfulness of a fact past or present, material to the contract; or,

''2. Belief in the present existence of a thing material to the contract, which does not exist, or in the past existence of such a thing, which has not existed.'' The mistakes for which relief may be granted are thus limited to those that are not caused by the neglect of a legal duty. (*Reid* v. *Landon,* 166 Cal.App.2d 476, 482 [333 P.2d 432].)

 In the case at bench the record reflects that three or four months prior to the scheduled close of escrow, the defendants expressed dissatisfaction with the release clause. They retained new counsel at this time and subsequently again changed counsel. Just before the close of escrow, the defendants, through their then counsel, indicated their dissatisfaction with the terms of the release clause as drafted by their prior counsel, but raised no objection to the close of escrow. It is thus ''clear'' that defendants had notice of sufficient facts to put them on inquiry as to the meaning of the word ''contiguous,'' or as to the configuration of the parcels to be released and the area from which they would be released. Nevertheless they failed to make reasonable inquiry, or any inquiry, and were hence guilty of neglect of a legal

duty. Consequently, the mistake which the defendants entertained was not a mistake of fact within the meaning of the law. (*Mesmer* v. *White, supra,* 121 Cal.App.2d 665, 674; *Roller* v. *California Pac. Title Ins. Co., supra,* 92 Cal.App.2d 149; *Taylor* v. *Taylor, supra,* 66 Cal.App.2d 390.)

 In addition to the fact that defendants were guilty of neglect of a legal duty and thus not entitled to rescission, the record reflects that rescission was also improper for the reason that enforcement of the contract (without the release clause) would not impose an oppressive burden on the defendants, while rescission of the contract would impose substantial hardship on the plaintiffs. (Cf. *M. F. Kemper Constr. Co.* v. *City of Los Angeles,* 37 Cal.2d 696, 701 [235 P.2d 7].)

In the case under review, there is no evidence that the original price for the land was not fair. Moreover, there is no evidence which would support an inference that enforcement of this contract (without the release clause) at the present time would be oppressive to the defendants. On the other hand, there is substantial evidence which convinces this court that rescission as ordered by the trial court would impose great hardship on the plaintiffs.

 Defendants urge that the release clause is an integral part of the transaction and that its invalidity renders the entire transaction void and rescindable. However, it is obvious that this release clause was designed for the benefit of the plaintiffs as the buyers, and the Shutts as sellers would not be prejudiced by the enforcement of the contract without the release clause. Also, even assuming the executory release clause is an integral part of this transaction, the defendants are not in a position to assert its invalidity because they created the ambiguity or uncertainty which invalidates the clause. They, therefore, are estopped to assert this contention upon general principles of equity.

Plaintiffs have not sought rescission in the event the release clause was invalidated. Moreover, in their opening brief they have indicated a willingness to retain title to this property without the benefit of the release clause in the event it is held unenforceable. In order to obviate any concern that plaintiffs might, at retrial, ask leave to amend to rescind this transaction, we hold that they are estopped to change their remedy to rescission by their original election to seek specific performance of this release clause. Plaintiffs have clearly manifested an intention to pursue one of two inconsistent remedies, and such a change obviously would operate to

defendants' prejudice in view of the lapse of time. (*Ferguson* v. *Fajardo*, 211 Cal.App.2d 119, 121 [27 Cal.Rptr. 72] ; citing 1 Witkin, Cal. Procedure (1954) § 51, p. 548.)

We have considered the claims of the plaintiffs for an adjustment of their interest obligation under this deed of trust, for a postponement of the principal payment dates for the period between the close of escrow and entry of judgment, and for an award of compensation for loss of use of the $250,000 down payment during that period. However, we conclude that this is "more like an accounting between the parties" involving a determination of credits and offsets which should be handled by the trial court. (*Ellis* v. *Mihelis*, 60 Cal.2d 206, 220 [32 Cal.Rptr. 415, 384 P.2d 7].)

It is well settled that in a contested case the court may grant any relief justified by the allegations of the complaint and the evidence, even though the relief is greater than or different from that requested. (*Singleton* v. *Perry*, 45 Cal.2d 489, 498-499 [289 P.2d 794].) This rule has been followed in an equitable proceeding under a prayer for general relief. (*Knox* v. *Wolfe*, 73 Cal.App.2d 494, 505 [167 P.2d 3].) The complaint in the case under review contains a prayer for general relief. Therefore, the trial court clearly has the right to make the determination hereinbefore directed, including a declaration of the rights and obligations of the parties.

The judgment is reversed and the case remanded for further proceedings in conformity with this opinion.

Kerrigan, Acting P. J., and Tamura, J., concurred

A petition for a rehearing was denied March 10, 1969, and the petitions of appellant S. V. Hunsaker & Sons, Inc., and of respondents for a hearing by the Supreme Court were denied April 17, 1969.