Filed 5/16/16  Mix v. Capital One CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

JANET L. MIX et al.,

    Plaintiffs and Appellants,

v.

CAPITAL ONE, N.A.,

    Defendant and Respondent.

2d Civil No. B260744
(Super. Ct. No. 1397068)
(Santa Barbara County)

INTRODUCTION

Appellants Janet and Terence Mix refinanced their home by executing a note and deed of trust in favor of ING Bank, FSB (ING).[1]  When the Mixes fell into arrears, ING foreclosed.  The Mixes sued ING for declaratory relief and damages stemming from the loan transaction and the foreclosure.  As relevant here, they claimed that ING violated the federal Truth in Lending Act (TILA) by failing to properly notify them of their right to rescind (15 U.S.C. § 1635, subd. (a)) and violated California's non-judicial foreclosure statute by engaging in bid-rigging during the auction of their home. (Civ. Code, § 2924h, subd. (g).)

---

[1] Capital One, N.A., is the successor by merger to ING.  Throughout this opinion, we refer to Capital One as ING.

The trial court rejected the Mixes' TILA claim when it sustained ING's demurrer to their second amended complaint without leave to amend. The trial court granted summary judgment to ING on the Mixes' bid-rigging claim. The Mixes contend that these rulings were erroneous. In addition, they challenge the trial court's setting aside of ING's default and denying them leave to amend their second amended complaint to add two new causes of action. We affirm.

DISCUSSION[2]

*Setting Aside of ING's Default*

The Mixes filed this action on April 24, 2012. On June 4, 2012, they mailed a copy of the summons and complaint to ING's corporate address. After ING did not file a responsive pleading or otherwise appear in the action, the trial court entered its default on August 6, 2012. On August 28, 2012, ING appeared telephonically at the case management conference.[3] The Mixes told the trial court that they would not stipulate to setting aside the default. ING stated that it would file a motion seeking such relief.

On February 15, 2013, approximately five and a half months later, ING moved to have the default set aside. It argued that the order entering default was void because the summons had not been properly served (Code Civ. Proc., § 473, subd. (d); *Hearn v. Howard* (2009) 177 Cal.App.4th 1193, 1200) and that it lacked actual notice of the action in time to file a responsive pleading. (Code Civ. Proc., § 473.5, subd. (a).)

The trial court granted ING's motion. Although the trial court was "not impressed with [ING's] attention to detail and to following up on this matter," it found that ING had "demonstrated the technical facts establishing lack of notice and the

---

[2] The general facts and procedural history are set forth in the introduction. We discuss additional facts and procedural history as they relate to the Mixes' specific contentions.

[3] The trial court's minute order reflects that attorney Eitan Yehoshua appeared telephonically on behalf of ING. ING neither acknowledges nor disputes that Yehoshua was representing it in the matter.

2

absence of inexcusable neglect" and that its motion for relief under Code of Civil Procedure section 473.5 was "timely."[4]

Code of Civil Procedure section 473.5 (a) permits the trial court to set aside a default if the defendant, through no inexcusable fault of its own, received no "actual notice . . . in time to defend the action," provided that relief is requested "within a reasonable time," but not more than "180 days after service . . . of a written notice that the default . . . has been entered." We review the trial court's ruling for abuse of discretion. (See *Ramos v. Homeward Residential, Inc.* (2014) 223 Cal.App.4th 1434, 1444.) Because the law "favor[s], whenever possible, a hearing on the merits," we require "very slight evidence . . . to justify a trial court's order setting aside a default" (*Shamblin v. Brattain* (1988) 44 Cal.3d 474, 478) "when a party in default moves promptly to seek relief" (*Ibid*.).

The Mixes contend that ING had "actual notice in time to defend the action and to avoid the default" because it "was properly served with the summons and complaint at [its] corporate headquarters." Even assuming that service of the summons was proper—an issue ING disputes and we need not decide—ING's constructive notice of the lawsuit is irrelevant to whether it had actual notice. (*Rosenthal v. Garner* (1983) 142 Cal.App.3d 891, 895.)

Whether ING had actual notice of the lawsuit prior to entry of default was a disputed issue of fact, and the Mixes simply disagree with the trial court's resolution of it. Although they claim to have faxed information about the case to Jennifer Cook, ING's attorney responsible for "receiving and reviewing mortgage litigation," three weeks before entry of default, they used an unverified fax number taken from a commercial third party website, avvo.com, that had no apparent affiliation with ING, Cook, or any state bar. ING claimed that at "the end of August 2012" in the course of selling the

---

[4] In addition, the trial court appeared to grant relief under Code of Civil Procedure section 473 subdivision (d) given its finding that the Mixes "failed to 'properly serve' [ING]." (See *Dill v. Berquist Construction Co.* (1994) 24 Cal.App.4th 1426, 1441 [untimely motion to set aside default judgment may be granted if judgment is "void on its face" due to improper service of the complaint].)

Mixes' former property to a third party, a title search revealed that the Mixes had recorded a lis pendens. The trial court was entitled to credit this statement as explaining how ING first learned of the litigation, and "we defer to factual determinations made by the trial court when the evidence is in conflict." (*Ramos v. Homeward Residential, Inc.*, *supra*, 223 Cal.App.4th at p. 1441.)

The Mixes also contend that ING's delay of more than five months before seeking to set aside the default was unreasonable. Here too they simply disagree with a factual determination that the trial court had wide latitude in making. ING was required to file its motion within a "reasonable time" after learning of the default, meaning that it had to exercise diligence. (*Schenkel v. Resnik* (1994) 27 Cal.App.4th Supp. 1, 4.) The Mixes had filed a previous action against ING over the same subject matter, which ING had been diligently defending. The previous action was pending for more than a year when the Mixes filed this case, which was in effect an amended complaint rather than a wholly separate action. Three weeks after entry of default in this action ING informed both the Mixes and the trial court that it intended to move to set aside the default. The Mixes neither served ING with "written notice that the default . . . ha[d] been entered"[5] nor obtained "entry of a default judgment," which would have started the 180-day or two-year time limit, respectively, for ING's motion. (Code Civ. Proc., § 473.5, subd. (a).) In this context, the trial court did not abuse its discretion in concluding that ING filed its motion within a reasonable time. (Cf. *Goya v. P.E.R.U. Enterprises* (1978) 87 Cal.App.3d 886, 892 [delay of four months and six days after defendants received notice of entry of default judgment not unreasonable].)

*Dismissal of TILA Claim*

In the Mixes' second amended complaint, they claimed that ING violated TILA by providing insufficient notice that within three days of the transaction they had a right to rescind it. They sought rescission as a remedy. ING demurred, asserting that the

_____

[5] We disagree with the Mixes that this statutory requirement was satisfied by serving ING with a case management statement, buried in which was a sentence stating that default had been entered against ING on an unspecified date.

4

Mixes' TILA claim was untimely because they notified ING of their intent to rescind more than three years after the loan was consummated. (15 U.S.C. § 1635, subd. (f).) The trial court agreed and sustained the demurrer without leave to amend. We review the second amended complaint de novo, assuming the truth of all factual allegations, "to determine whether it alleges facts sufficient to state a cause of action under any legal theory." (*Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 42.)

The Mixes alleged that on May 3, 2007, the date they executed the loan documents, ING provided them with a "Notice of Right of Rescission" (NRR) but failed to provide each of them with the two required copies. The NRR omitted the dates that the three-day rescission period started and ended.

The deed of trust and rider (collectively, 2007 deed) provided the property's street address but lacked a description of the property in metes and bounds, referring to a non-existent "attached Exhibit A." In addition, the 2007 deed provided that a third party could assume the loan under certain conditions.[6]

ING mistakenly believed that the loan was not immediately assumable but, after funding it, realized that the 2007 deed provided otherwise. In February and March 2008, ING provided the Mixes with a second deed of trust and rider (collectively, 2008 deed), the purpose of which was to "replace" the original. The 2008 deed was identical to the 2007 deed, including the date, except that it included Exhibit A, a metes and bounds description of the property, and a provision that the loan was not assumable during the first five years.

The Mixes executed the 2008 deed. They did not discover the difference between its terms and the terms of the 2007 deed regarding assumability until they

_____

[6] Specifically, the 2007 deed allowed the Mixes to transfer the property to a third party without paying off the loan if, after evaluating the third party's creditworthiness, ING "reasonably determines that [its] security will not be impaired by the loan assumption and that the risk of a breach of [the 2007 deed] is acceptable." ING could charge a "reasonable" fee for the transfer and require the third party to sign an "acceptable" assumption agreement.

reviewed both sets of documents in June 2010. On January 17, 2011, they notified ING that they were rescinding the loan agreement and requested repayment of $329,323.23 in interest, escrow costs, and other fees.

The Mixes contend that their notice of rescission was timely because the loan was consummated not when they executed the 2007 trust deed but rather in June 2010.[7] They argue that the 2007 deed of trust was void because it was based on a mutual mistake involving the loan's assumability and lacked a "legal description" of the property.

TILA "grants borrowers the right to rescind a loan 'until midnight of the third business day following the consummation of the transaction or the delivery of the [disclosures required by TILA], whichever is later, by notifying the creditor . . . of his intention to do so.' [15 U.S.C. § 1635, subd. (a).] This regime grants borrowers an unconditional right to rescind for three days, after which they may rescind only if the lender failed to satisfy [TILA's] disclosure requirements. But this conditional right to rescind does not last forever. Even if a lender *never* makes the required disclosures, the 'right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever comes first.' [*Id.* § 1635, subd. (f).]" (*Jesinoski v. Countrywide Home Loans, Inc.* (2015) _ U.S. _ [135 S.Ct. 790, 791-792].)

"Consummation means the time that a consumer becomes contractually obligated on a credit transaction." (12 C.F.R. § 1026.2, subd. (a)(13).) It "is a matter to be determined under applicable [state] law."[8] (12 C.F.R. Pt. 1026, Supp. I, Part 1, 2(a)(13).) In California, contract formation requires parties capable of contracting, a lawful object, consideration, and, at issue here, the parties' consent, or mutual assent.

---

[7] It is unclear why the Mixes assert that the loan was consummated in June 2010, *i.e.*, when they claim to have first understood the terms of the 2008 deed, rather than when they executed it. Both dates are within three years of the date that they notified ING of their intent to rescind.

[8] Both the 2007 and 2008 deeds are expressly governed by federal and California law.

(Civ. Code, §§ 1550, 1565.) Although "[c]onsent is not mutual, unless the parties all agree upon the same thing in the same sense" (Civ. Code, § 1580), " '[t]he existence of mutual consent is determined by objective rather than subjective criteria' " (*T.M. Cobb Co. v Superior Court* (1984) 36 Cal.3d 273, 282). "[C]ourts will give written agreements, if reasonably possible, a construction which will result in their being enforceable contracts. [Citations.]" (*Lawrence v. Shutt* (1969) 269 Cal.App.2d 749, 761.)

The 2007 deed stated in unambiguous terms that the loan was assumable. That ING may have been negligent by drafting the 2007 deed contrary to its own expectations did not render the assumability provision—let alone the entire instrument—unenforceable. (See *Lawrence v. Shutt*, *supra*, 269 Cal.App.2d at p. 765 ["[C]ourts will not set aside contractual obligations, particularly where they are embodied in written contracts, merely because one of the parties claims to have been ignorant of or misunderstood the provisions of the contract. [Citations.] This is especially true where the contractual obligation sought to be set aside has been executed by the complainant without the exercise of reasonable care"].)

Nor was the 2007 deed unenforceable for want of a "legal description," by which the Mixes evidently mean the metes and bounds description contained in Exhibit A to the 2008 deed. "It is only necessary that the description of premises in a deed or mortgage be sufficiently definite and certain to enable the land to be identified." (*Rea v. Haffenden* (1897) 116 Cal. 596, 602-603.) A street address is generally sufficient. (*Finn v. Goldstein* (1927) 201 Cal. 605, 607.)

Because the Mixes' loan obligation was enforceable when they executed the note and 2007 deed, their notice of intent to rescind was untimely. Consequently, the trial court properly sustained ING's demurrer to their TILA claim in the second amended complaint.

### Denial of Leave to Amend

The Mixes moved for leave to file a third amended complaint to add claims for fraudulent concealment and intentional infliction of emotional distress. The trial

court denied their motion, finding that they were not diligent in seeking leave to amend and that ING would be prejudiced by further amendment. The Mixes challenge this ruling. A trial court enjoys wide discretion in deciding whether to allow amendment of any pleading, and as a matter of policy, its ruling " 'will be upheld unless a manifest or gross abuse of discretion is shown.' " (*Record v. Reason* (1999) 73 Cal.App.4th 472, 486.)

As the trial court explained, the Mixes' proposed new claims were based on ING's issuance of a 1099-C tax form. The Mixes, however, had "contended that the 1099-C form . . . was improper and caused them damages" "[s]ince the beginning of the litigation" more than two years earlier. There was no reason they could not have included their proposed claims in their original complaint notwithstanding that they subsequently gained additional information about the claims through discovery.

Moreover, at the time of the ruling, ING's motion for summary judgment on the remaining causes of action was set for hearing in four weeks and the trial was scheduled to start in two months. Allowing the Mixes to add new claims would have required continuing one or both of those dates. The trial court's decision to continue the trial at the Mixes' request due to their "genuine, medical emergency" is beside the point. ING still would have had to file a responsive pleading to the third amended complaint, conduct additional discovery, and potentially file a second motion for summary judgment in less than two months. The trial court did not abuse its discretion by determining that to be prejudicial. (See *Yee v. Mobilehome Park Rental Review Bd.* (1998) 62 Cal.App.4th 1409, 1428 [denial of leave to amend proper where "the proposed amendments were offered more than two years after the original complaint was filed, and shortly before a final resolution of all of the issues remaining before the superior court"].)

*Summary Judgment on Bid-Rigging Claim*

ING purchased the Mixes' home at the foreclosure auction by making a credit bid of $1.9 million, approximately the amount of their indebtedness. The Mixes claimed that ING illegally bid $200,000 above what it believed was the property's fair market value in order to discourage other bids.

8

Two months later ING sent the IRS a 1099-C form incorrectly stating that it had cancelled (i.e., written off) $465,000 of the Mixes' debt when in fact it had not cancelled any of their debt because the foreclosure sale extinguished it. The Mixes claimed that they incurred tax liability as a result of ING's falsely reporting that their debt had been cancelled. After the Mixes filed suit, ING submitted a corrected 1099-C form to the IRS stating that it had not cancelled any of the Mixes' debt.

The trial court granted summary judgment to ING on the Mixes' bid rigging claim, finding that there was no evidence of bid rigging or damages. We review this ruling de novo, liberally construing the evidence in support of the Mixes, as the party opposing summary judgment, and resolving any doubts in their favor. (*Hampton v. County of San Diego* (2015) 62 Cal.4th 340, 347.)

The Mixes conflate two distinct claims. One is the bid-rigging claim they advocate here. The other, essentially a claim that ING injured them by committing tax fraud, they disavowed below.

The Mixes' bid-rigging claim fails as a matter of law. The statute on which they rely prohibits "any person, acting alone or in concert with others," from "accept[ing] . . . any consideration of any type not to bid" or "fix[ing] or restrain[ing] bidding" at the non-judicial foreclosure sale. (Civ. Code, § 2924h, subd. (g).) As this language suggests, the statute "seeks to protect property owners in default by ensuring fair and open bidding and the benefits of competition." (*Lo v. Jensen* (2001) 88 Cal.App.4th 1093, 1095.) In other words, the statute forbids a party from *suppressing* the sale price below its fair market value. It does not prevent a good faith bid for more than the property is objectively worth. A property owner in default simply would not suffer damages in that situation.

As the trial court explained, the same statute provides that "[t]he present beneficiary of the deed of trust under foreclosure," ING, "shall have the right to offset [its] bid . . . to the extent of the total amount due the beneficiary including the trustee's fees and expenses." (Civ. Code, § 2924h, subd. (b).) A lender is entitled to make a "full credit bid"—" 'a bid "in an amount equal to the unpaid principal and interest of the

mortgage debt, together with the costs, fees and other expenses of the foreclosure" ' "—because it " 'avoid[s] the inefficiency of requiring the lender to tender cash which would only be immediately returned to it.' " (*Biancalana v. T.D. Service Co.* (2013) 56 Cal.4th 807, 816.)  The parties agree that ING made a full credit bid at a price above market value.  That defeats the Mixes' bid-rigging claim.

The Mixes' damages, if any, stem from their allegation that after the sale ING submitted a false 1099-C form.  But the Mixes informed the trial court that they were "not seeking to prove violation of any tax laws."  Regardless, neither their allegation nor their evidence supports a bid-rigging claim, which involves bids, not improper post-sale accounting or misrepresentations to the tax authorities, both issues having since been corrected.

DISPOSITION

The judgment is affirmed.  Costs are awarded to respondent.

<u>NOT TO BE PUBLISHED.</u>

PERREN, J.

We concur:

GILBERT, P. J.

YEGAN, J.

10

Thomas P. Anderle, Judge

Superior Court County of Santa Barbara

_____


Law Offices of Terence J. Mix and Terence J. Mix for Plaintiffs and Appellants.

Severson & Werson, Jan T. Chilton, and Jonah S. Van Zandt for Defendant and Respondent.