Gordon, Robert B., J.
This case arises out of a failed betrothal between the plaintiffs daughter and the defendant. By reason of an agreed marriage that the defendant called off prior to its ceremonial consummation, the plaintiff has brought an action to recover money damages that the would-be bride’s father advanced to the defendant and/or to third parties for the defendant’s benefit. The defendant has moved to dismiss the action, arguing principally that the damage claims asserted in the Complaint are barred by Mass. G.L.c. 207, §47A.
FACTUAL BACKGROUND[1]
In the time frame between 2011 and 2012, the families of Ashraf Alkhaiiy (“Alkhaiiy” or the “plaintiff’) and Ridwan Ahmad (“Ahmad” or the “defendant”) became acquainted. On August 12, 2012, Ahmad delivered an engagement ring to Alkhaiiy’s daughter, expressing an intent to many her. Between June 27 and 28, 2013, and what appears to be in accordance with a Saudi Arabian custom, the families of Alkhaiiy and Ahmad met at length to negotiate and agree upon the terms of marriage. At that time, the families fixed a wedding date of December 24, 2014.
On October 22, 2014, Ahmad “confirmed” his engagement to Alkhaiiy’s daughter, committing to be bound by the terms of the marriage agreement that *261 had been reached that summer. On or about November 8, 2014, however, Ahmad and his family “attempted to repudiate the marriage agreement” on “the supposed basis that the terms of the marriage agreement were neither disclosed nor negotiated.” There followed a meeting between the parties on November 10, 2014, at which meeting Ahmad and his family appeared to reconsider their earlier renunciation of the agreed marriage. But on November 13, 2014, Ahmad cancelled the wedding for good via email. As a result, the planned wedding did not take place on the “contemplated ceremonial date.”[2]
The Complaint alleges no deliberate fraud on the part of the defendant in calling off the wedding. The Complaint likewise makes no claim that the goods and services financed by the plaintiff were provided on the expressly agreed condition that a marriage between Ahmad and Alkhaiiy’s daughter in fact take place. By this legal action, however, Alkhaiiy nonetheless seeks damages recovery on account of various expenditures he made for the defendant’s benefit—costs he claims to have incurred and benefits he claims to have conferred upon Ahmad in the expectation of a wedding and marriage that never came to be.
In Counts I through III of the Complaint, therefore, the plaintiff asserts breach of contract claims, and thereby seeks the repayment of monies he expended for the benefit of Ahmad. Count I thus alleges that Alkhaiiy spent $23,359 for Ahmad’s medical school tutoring, travel and expenses associated with Ahmad’s clerkship in neurology. In Count II, Alkhaiiy alleges that he paid the rental costs ($5,386.65) for a Cambridge apartment that Ahmad occupied for two months. And in Count III, Alkhaiiy alleges that he paid the rent ($9,217.74) for an apartment in Boston that Ahmad occupied for eight months.
In Counts IV through IX of the Complaint, the plaintiff asserts claims for unjust enrichment, maintaining that he made various expenditures for the benefit of Ahmad in anticipation of his marriage to Alkhaiiy’s daughter. Alkhaiiy thus seeks in Count IV the repayment of $9,217.74 he advanced to Ahmad’s Boston lessor as rental payments. In Count V, Al-khairy alleges that he paid substantial fees ($82,666.65) for Ahmad to become a Saudi citizen. In Count VI, Alkhaiiy claims that he paid $3,626.67 for Ahmad’s pre-wedding travel and administrative expenses. In Count VII, Alkhairy maintains that he incurred various wedding-related expenses to third parties ($10,216.60 in total) that included a deposit on the wedding hall and other sundry accommodations. In Count VIII, Alkhaiiy alleges that he provided Ahmad with $75,000 worth of services related to the support and promotion of his medical career in the United States. And in Count IX, Alkhaiiy avers that he funded certain travel as well as the costs of customized wedding attire for Ahmad, in the amount of $16,322.72.
Finally, in Count X of the Complaint, the plaintiff asserts a claim for restitution, alleging without particularized description that Alkhairy furnished properly to Ahmad valued at $225,796.05. This demand equals the total of all amounts sought in Counts I through IX, making clear that plaintiff is simply advancing an alternate theory of recovery for the same financial losses (rather than asserting an entirely separate claim).
DISCUSSION
The Court concludes that the claims pleaded in the Complaint cannot be reconciled with the General Court’s statutory elimination of the so-called “heart balm” cause of action, and must therefore be dismissed. In 1938, the Massachusetts Legislature enacted a statute that provided, in its entirely, as follows:
Breach of contract to many shall not constitute an injuiy or wrong recognized by law, and no action, suit or proceeding shall be maintained therefor.
Mass. G.L.c. 207, §47A. Since the adoption of this law, courts in Massachusetts have had occasion to construe its reach only twice in reported decisions.
In Thibault v. Lalumiere, the Supreme Judicial Court upheld the dismissal of civil claims brought on behalf of a woman who alleged that the defendant had fraudulently promised to many her, thereby inducing her to “submit to [his] embraces and caresses,” forgo other marriage opportunities, lose employment, and suffer all manner of humiliation and heartache. Thibault, 60 N.E.2d 349, 350 (1945). In affirming the trial court’s dismissal of the Complaint, the SJC observed that, “(bjowever the plaintiffs contentions are viewed, they all stem from the alleged contract to many which she alleged was made between the defendant and herself. All the damages claimed by her were caused by his breach of that contract.” Id. at 351 (citations omitted). Relying upon G.L.c. 207, §47A, the Court reasoned that this statute “changed the public policy of [the] Commonwealth.” Id. For it “not only abolished the right of action for breach of promise [to many,] but it went farther and abolished any right of action, whatever its form, that was based upon such a breach.” Id. The Thibault Court thereupon concluded that, inasmuch as “[t]he plaintiffs cause of action arises out of a breach of promise of marriage, . . . she cannot circumvent the statute by bringing an action in tort for damages so long as the direct or underlying cause of her injuiy is the breach of promise of marriage.” Id.
Fourteen years later, the Supreme Judicial Court issued its decision in De Cicco v. Barker, 159 N.E.2d 534 (Mass. 1959). In De Cicco, the SJC partially narrowed the holding in Thibault that declared that Chapter 207, §47A had “abolished any right of action, whatever its form, that was based upon breach of promise.” Id. at 535. Reasoning that this construction of the law was “too inclusive,” the Court held that the *262 statute would not bar an action “to obtain on established equitable principles restitution of properly held on a condition which the defendant was unwilling to fulfill.” Id. De Cicco arose from an action in which the plaintiff sought to recover a 6-carat diamond given to the defendant as an engagement ring, as well as two other rings given during the course of the relationship, when the defendant broke off the engagement without cause or fault on the part of the plaintiff. Id. A master had found that the plaintiff provided the diamond ring to the defendant “as an engagement ring upon the implied condition that the parties would be married when and if the [plaintiffs] wife died,” and that he had provided her with three other rings as “absolute gifts.” Id. On appeal from the dismissal of plaintiffs claims to recover the rings he had gifted to the defendant, the De Cicco Court held that the lower court’s application of Chapter 207, §47A had been too expansive. Id. Carving out an exception for the equitable restitution of property that had been given in a clearly conditional manner, the Court declared:
It is generally held that an engagement ring is in the nature of a pledge, given on the implied condition that the marriage shall take place. If the contract to many is terminated without fault on the part of the donor he may recover the ring.
Id. at 535 (citing cases).
The De Cicco Court went on to distinguish the SJC’s earlier ruling in Thibault In doing so, however, and contrary to Alkhaiiy’s contention in the present case, the Court made clear that it was not overruling Thibault altogether:
The present suit is different in character. It is a proceeding not to recover damages either directly or indirectly for breach of the contract to marry but to obtain on established equitable principles restitution of properly held on a condition which the defendant was unwilling to fulfil. It seeks to prevent unjust enrichment. Authority for the maintenance of such a suit is found in the Restatement: Restitution, §58, and in the decisions of other States having statutes similar to §47A. We think it is not the kind of suit which the Legislature intended to abolish and that the plaintiff is entitled to recover his engagement ring.
De Cicco, 159 N.E.2d at 535 (internal citations omitted). Thus distinguishing Thibault the De Cicco Court held that plaintiff was entitled to recover his engagement ring, but left intact the dismissal of plaintiffs claims seeking the disgorgement of the other rings that had been gifted to the defendant.
The “established equitable principles” which De Cicco invokes are those summarized in Section 58 of the Restatement (First) of Restitution, which the SJC cites without amplification in its decision.[3] Section 58 provides as follows:
A person who has conferred a benefit upon another, manifesting that he does not expect compensation therefor, is not entitled to restitution merely because his expectation that an existing relation will continue or that a future relation will come into existence is not realized, unless the conferring of the benefit is conditioned thereon.
Restatement (First) of Restitution, §58 (1937). A Comment and Illustration accompanying Section 58 go on to address the very situation which confronts the Court in the case at bar, where a parly engaged to mariy makes gifts to his intended of both distinctive property and non-distinctive financial resources:
If there is an engagement to marry and the donee, having received the gift without fraud, later wrongfully breaks the promise of marriage, the donor is entitled to restitution if the gift is an engagement ring, a family heirloom or other similar thing intimately connected with the marriage, but not if the gift is one of money intended to be used by the donee before the marriage (see Illustration 7).
[Illustrations]
7. A makes gifts of money and of family heirlooms to B who has promised to marry him. B spends the money for living expenses as was expected but retains the jeweliy. Later B comes to the conclusion that she does not wish to mariy A and refuses to do so. A is not entitled to restitution of the money but is entitled to the return of the heirlooms.

Id.

The take-aways from these two decisions, and the principles of equity upon which they rest, are easily applied to the facts of the case at bar. First, per Thibault, and regardless of how pleaded, claims that seek recompense for losses or injuries that have as their source the breach of a promise to many will not be recognized under Massachusetts law. Here, although pleaded according to three different common-law theories of recoveiy (viz., breach of contract, unjust enrichment and equitable restitution), the ten counts of the Complaint are in all material respects indistinguishable. Each prays the disgorgement of money from Ahmad which the plaintiff claims to have expended for his benefit in the expectation that Ahmad would be marrying his daughter. Whether styled as seeking legal damages for a contract breach, equitable relief from unjust enrichment, or restitution of money conferred on an implied condition, all ten claims in the Complaint rest on a singular premise. Namely, that by failing to mariy the plaintiffs daughter as promised, the defendant forfeited the right to retain the various forms of financial support that Alkhaiiy had provided him. As such, these claims fall squarely within the prohibition of G.L.c. 207, §47A, as interpreted by the still-surviving principles of Thibault. (The Court acknowledges the possibility that three counts of this inartfully pleaded Complaint may survive dismissal, and these three counts will be addressed infra.)
*263 Turning, then, to the exception carved out by De Cicco for claims seeking equitable restitution of property given to a person in anticipation of their marriage, the Court finds this exception inapplicable to the present case. Unlike the engagement ring at issue in De Cicco, or the heirlooms referenced in the Restatement, the benefits conferred by Alkhaiiy in this case were in each instance different in critical respects. First, Alkhaiiy is in no instance seeking the recoveiy of tangible property at all. The plaintiff in this case seeks money, precisely the form of generic recompense that the Restatement section relied upon by the De Cicco Court declares may not be recaptured on account of a broken promise to marry. Second, and leaving aside the matter of motivation, the vast majority of the goods and services that Alkhaiiy helped to finance had very little (if anything) to do with Ahmad’s forthcoming wedding to his daughter. Unlike the conferral of engagement rings or family heirlooms, the plaintiff in this case helped his future son-in-law with the ordinary costs of everyday living—matters such as rent, travel expenses, educational costs, immigration-related fees, and the promotion of his medical career. These are gifts that are not inherently tied to the consummation of a marriage, and Alkhaiiy might well have bestowed them upon Ahmad as away of expressing love for his daughter.[4] Third, and of no small importance when conducting an equitable calculus, the defendant in this case does not continue to hold tangible property given to him by the plaintiff. The overwhelming majority of the financial support provided to Ahmad by Alkhairy in this case took the form of consumed living expenses (apartment rentals, travel costs, profession-related fees, and the like) that the defendant is no longer in a position to disgorge. Indeed, it appears that virtually all of the plaintiffs gifting took the form of payments to third-party vendors (who provided goods and services to Ahmad) rather than to Ahmad himself. Equity may not permit a party who calls off a wedding to retain an expensive engagement ring that her jilted fiancé gave her in contemplation of marriage; but that is a far ciy from authorizing a civil suit to recover money damages for all manner of largesse granted to such a party during an ultimately abortive engagement. The Restatement (First) provisions cited by the De Cicco Court unmistakably recognized this critical distinction, and on their face defeat the claims the plaintiff has advanced in this case.[5]
In sum, Massachusetts law makes clear that a plaintiff may not recover money damages claimed to be owed on account of the defendant’s failure to honor a prior commitment to many. The narrow exception for equitable recoveiy of engagement rings, family heirlooms and other distinctive tangible property bestowed upon a party’s intended in contemplation of marriage is inapplicable to the case at bar.[6] For these reasons, the Complaint as pleaded fails to state a claim upon which relief can be granted under Massachusetts law, and will be dismissed.[7]
The Court observes, however, that three claims put forward in this ten-count Complaint are pleaded in a manner that might allow them to go forward as a matter of law. In Count I, the Complaint summarily characterizes the expenditures that Plaintiff seeks to recover as a “loan,” and makes reference to the defendant’s “acknowledgment” of same. (See Compl. Paras. 15-16.) No facts, however, are recited to establish any of the elements of an actual loan agreement— that is, a bilateral and mutually understood bargain whereby, wholly independent of Ahmad’s marriage to the plaintiffs daughter, the parties agreed that the defendant would repay monies that were being loaned to him. As pleaded, therefore, this claim fails to satisfy the standards of Rule 12 and must be dismissed. See Iannacchino v. Ford Motor Co., 451 Mass. 623, 626 (2008). The dismissal, however, shall be without prejudice to the plaintiffs right to re-file the claim with sufficiently pleaded allegations that the parties in fact had a loan agreement independent of Ahmad’s marriage to the plaintiffs daughter. Such re-pleaded claim must be filed within 30 days of the date hereof, or its dismissal will ripen into one with prejudice.
In a similar vein, Counts II and III of the Complaint conclusorily suggest that the monies sought by the plaintiff for breach of contract had been “advanced” as rent to lessors on behalf of Ahmad, and that Ahmad in some unspecified manner “acknowledged this financial obligation to Alkhairy.” (See Compl. Paras. 20 and 24.) Although such allegations arguably employ the vocabulary of an agreement to repay money advanced to third parties on the understanding that it would be repaid (marriage to the plaintiffs daughter vel non), no facts beyond such summary labels are pleaded that would permit a reasonable inference that these parties had an actual contract as that term is understood in the law. No facts are presented to give substance to what, if anything, gives rise to the “financial obligation” claimed, leaving the Court compelled to treat this as a “conclusory allegation” entitled to no weight in the precincts of Rule 12. See Curtis v. Herb Chambers 1-95 Inc., 458 Mass. 674, 675 (2011). Once again, therefore, the claim as pleaded fails to state a cause of action under the standards of Iannacchino, and must be dismissed. Such dismissal, however, shall be without prejudice to the plaintiffs right to re-plead the claims (within 30 days of the date of this Order), sufficiently setting forth facts that would support a reasonable finding that the parties had a mutually understood agreement that Ahmad would repay the rental monies advanced to lessors on his behalf.
CONCLUSION AND ORDER
In accordance with the foregoing, the Defendant’s Motion to Dismiss the Complaint is hereby ALLOWED in its entirety. Counts IV through X of the Complaint are hereby DISMISSED WITH PREJUDICE. Counts I through III of the Complaint are DISMISSED WITHOUT PREJUDICE, the plaintiff granted leave to re-plead *264 these claims in accordance with the requirements set forth hereinabove.

 The following facts, and the reasonable inferences drawn therefrom, are derived from the plaintiffs Complaint, as Rule 12(b) requires.

 For reasons not explained in the Complaint, the wedding date originally set for December 24, 2014 was at some point moved to January 2, 2015. Neither date, however, witnessed the nuptials of Ahmad and the plaintiffs daughter.

 Although the Restatement (First) has since been succeeded by more modern iterations of the treatise, there is no suggestion anywhere in Massachusetts statutory or deci-sional law that the provisions of Section 58 cited in De Cicco no longer cany force in the Commonwealth. The defendant’s conclusory statement to the contrary in his Opposition, unsupported by cited authority, cannot be credited.

 It proves too much to suggest that the test is one of negative but-for causation—le., would the plaintiff have given the gifts had he known at the time that the defendant would one day leave his daughter at the altar. If parties could sue to “de-gift” (Seinfeld, J.) merely because the relations that motivated the original giving evolved other than as intended, the world would be awash in such litigation. This is unmistakably what the Legislature that adopted G.L.c. 207, §47A sought to avoid where matters of the heart are involved.

 At hearing, counsel for Alkhairy argued that De Cicco approved a far-reaching cause of action for any party seeking a restitutionary recovery of money expended for another in contemplation of marriage, as opposed to tort damages for personal injuries sustained by a broken promise to many. The Court does not read De Cicco so expansively. To the contrary, the language of De Cicco quoted above makes clear that the Court was carving out a very limited exception to the otherwise broadly stated principle of Chapter 207, §47A. That said, the Court acknowledges that the equitable principle articulated in De Cicco is not inalterably limited to the recovery of engagement rings and family heirlooms. Two judges of this Court have applied this exception to Chapter 207, §47A to allow a parly to a failed engagement to recapture its financial interest in the never-to-be marital home. See Bowzer v. Daly, 2006 Mass.Super. LEXIS 532 (2006) (Fremont-Smith, J.); MacCleave v. Merchant, 15 Mass. L. Rptr. 315 (Mass.SuperCt. 2002) (Muse, J.). These decisions appear entirely consistent with the limited carve-out to §47A articulated in De Cicco. The property is tangible, in the possession of the defendant, and its retention was inherently conditioned upon a marriage that drd not occur. As such, the cases provide no authority for the very different kind of financial claims the plaintiff has pleaded in the case at bar.

 The Court has reviewed the authorities from other jurisdictions cited by the plaintiff in his Opposition, and finds each of these authorities readily distinguishable. California, for example, has a statute that establishes the precisely opposite presumption (relative to G.L.c. 207, §47A) in heart balm lawsuits. See Shaw v. Shaw, 38 Cal.Rptr. 520 (1964). New Jersey authorizes a party to a broken engagement to recover her fair share of the financial contributions toward a jointly purchased marital home. See Aronow v. Silver, 538 A.2d 851 (N.J.Super.Ct. 1987). Kansas law is to similar effect. See Heiman v. Parrish, 262 Kan. 926 (1997). The law of these latter two states is not inconsistent with how this Court has applied Massachusetts law in the area, see n.5, supra; but the principle so embraced has no logical bearing on the facts presented here.

 At hearing, Plaintiffs counsel suggested for the first time that the Court should apply the law of Saudi Arabia, where civil claims such as the ones pleaded in this case are purportedly approved. The Court will decline this invitation, for each of two independently sufficient reasons. First, applying Massachusetts functional choice of law principles as the Court must, Massachusetts law clearly governs the contractual and equitable claims set forth in the Complaint. Virtually all of the events in issue took place in Massachusetts and, at the time of the litigation’s commencement, all of the affected parties (jilted bride, defecting groom and financially supportive father-in-law) resided in Massachusetts. The Commonwealth undeniably has a more “significant relationship” with, and a greater overall interest in, the present litigation than Saudi Arabia, see Bushkin Associates, Inc. v. Raytheon Co., 393 Mass. 622, 632 (1985), and its law should be applied to the case for this reason alone. Second, even if proper choice of law analysis did point to foreign law, it is well settled that Massachusetts courts will not apply the law of another jurisdiction that offends a clearly stated public policy of the Commonwealth. See Comdisco Disaster Recovery Services, Inc. v. Money Mgt. Services, Inc., 789 F.Sup. 48 (D.Mass. 1992); Shipley Co. v. Clark, 728 F.Sup. 818 (D.Mass. 1990). In the case at bar, to the extent Saudi Arabian law would allow for the prosecution of claims premised on a broken promise to marry, such law would offend the strong public policy that Massachusetts has expressed against such claims in G.L.c. 207, §47A.